**MINLI WANG, Petitioner,**

v.

**U.S. ATTORNEY GENERAL, Respondent.**

**No. 16-17563**
**Non-Argument Calendar**

United States Court of Appeals, Eleventh Circuit.

(October 27, 2017)

Scott Eric Bratton, Margaret Wong & Associates Co., LPA, Cleveland, OH, for Petitioner

Matthew Albert Connelly, Remi da Rocha-Afodu, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, OIL, Office of Immigration Litigation, Washington, DC, Alfie Owens, DHS/ICE Office of Chief Counsel—ATL, Atlanta, GA, for Respondent

Before TJOFLAT, WILLIAM PRYOR, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Petitioner Minli Wang, a native and citizen of China, petitions for review from the Board of Immigration Appeals ("BIA") order affirming the Immigration Judge's ("IJ") denial of her application for asylum. Petitioner argues that substantial evidence does not support the BIA's and IJ's adverse credibility determination. After careful review, we deny the petition for review.

## I. BACKGROUND

### A. Initiation of Removal Proceedings

On August 29, 2012, Petitioner was admitted to the United States on a visitor's visa with permission to remain in the United States until February 28, 2013. On February 27, 2013, one day before her visa expired, Petitioner filed an application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), alleging that she feared persecution in China on account of her political opinion. She listed her husband and minor son as beneficiaries.

In a statement attached to her application, Petitioner stated that she became pregnant with her first son in 2009. She was not yet married and because having a child out of wedlock violated China's family planning policy, she gave birth to him in Hong Kong. She later returned to mainland China, and once married, she became pregnant with her second child in 2012. Because it was also a violation of the family planning policy to have a second child, she escaped to the United States to avoid an induced labor and forced sterilization. She recounted that her former classmate's wife had become pregnant in violation of the family planning policy and had been forced to have an induced labor and was later forcibly sterilized. Petitioner explained that she and her husband would like to have more children but feared she would be forcibly sterilized if she returned to China.

On April 24, 2013, Petitioner's asylum application was referred to an IJ, and, on the same day, the Department of Homeland Security issued Petitioner a notice to appear ("NTA"), charging her with removability under 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States for a longer period of time than permitted. At the master calendar hearing, Petitioner conceded removability and indicated that she would be going forward on her asylum application.

In May 2014, Petitioner submitted an additional statement, claiming that she had an abortion in China in 1999, which her husband did not know about. Petitioner submitted yet another statement in March 2015, in which she described the details of the abortion, stating that two family planning officials came to her home, knocked on the door, and took her to the hospital where she underwent a "painful" abortion. She also stated that she had recently suffered a miscarriage in 2015 that may have been caused by her stress.

### B. Merits Hearing

At the merits hearing, Petitioner testified that in 1999, she was forced to undergo an abortion after her coworker suggested that she might be pregnant. She was 22 years old and not married at the time. After Petitioner's supervisor confronted her about violating China's birth control policy, two officials from the birth control bureau came to her home the next morning, forced the door open, took her to the hospital, and compelled her to have an abortion. She now has two children with her husband. She became pregnant with her elder son prior to her marriage, so she gave birth to him in Hong Kong to avoid China's family planning policy. She had her younger son in the United States because she feared being forced to have an abortion. If Petitioner returned to China and tried to register her youngest child, she would be fined for violating the family planning policy and would be forcibly sterilized.

Petitioner's husband, Paquan Wang, testified that he came to the United States in 2012 as a tourist and intended to apply for asylum based on his wife's previous abortion. Upon further questioning, he stated that he did not learn about his wife's abortion until 2014. He then changed his story, stating that he was aware of his wife's abortion when he came to the United States in 2012, only to change his story again, and state that he did not learn about the abortion until 2014.

### C. IJ and BIA Decisions

Following the hearing, the IJ denied Petitioner's applications for asylum, withholding of removal, and CAT relief. The IJ found Petitioner not to be credible based on inconsistencies in her testimony and her written statements, in addition to discrepancies between her testimony and that of her husband. The IJ further determined that Petitioner had failed to provide sufficient corroborating evidence to support her claim that she suffered past persecution based on her forced abortion. The IJ also concluded that Petitioner had not independently established a well-founded fear of future persecution. Finally, the IJ denied Petitioner's applications for withholding of removal and CAT relief.

Petitioner appealed to the BIA,[1] and the BIA affirmed the IJ's decision. The BIA determined that the record supported the IJ's adverse credibility finding, and the IJ cited specific and cogent reasons for her credibility determination. The BIA also

---

1. In her brief to the BIA, Petitioner challenged only the IJ's denial of her asylum claim based on the adverse credibility determination.

noted that Petitioner had waived any issue related to the IJ's denial of her applications for withholding of removal and CAT relief, as well as the IJ's determination that she had failed to corroborate her claim and that she did not demonstrate a well-founded fear of future persecution.[2]

## II.  DISCUSSION

### A.  Standard of Review

We review the BIA's decision as the final judgment, except where the IJ's decision has been expressly adopted by the BIA. *Carrizo v. U.S. Att'y Gen.*, 652 F.3d 1326, 1300 (11th Cir. 2011). We also review the IJ's decision to the extent that the BIA adopted its reasoning or found the IJ's reasons to be supported by the record. *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011). Here, because the BIA issued its own decision, we review the BIA's decision. However, because it agreed with several aspects of the IJ's reasoning, we review the IJ's decision to the extent of that agreement. *See id.*

We review factual findings, including credibility determinations, for substantial evidence. *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005). Under the substantial evidence test, we must affirm a determination "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (quotation omitted). We view the evidence in the light most favorable to the agency's decision, drawing all reasonable inferences in favor of that decision. *Id.* Stated another way, we cannot over-

turn a finding of fact unless the record compels it. *Id.* at 1287.

### B.  Adverse Credibility Determination

An applicant for asylum must meet the Immigration and Nationality Act's ("INA") definition of refugee. 8 U.S.C. § 1158(b)(1)(A). A refugee is an individual who cannot return to her home country due to "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). To establish eligibility for asylum, an applicant must demonstrate either past persecution, or a well-founded fear of future persecution, based on one of the five statutorily-protected grounds. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006). If the applicant demonstrates past persecution, there is a rebuttable presumption that she has a well-founded fear of future persecution. *Id.*

An applicant's testimony, if credible, alone can be sufficient to sustain the applicant's burden of proof, even without corroborating evidence. *Forgue*, 401 F.3d at 1287; 8 U.S.C. § 1158(b)(1)(B)(ii). Pursuant to the REAL ID Act of 2005, the IJ is to consider the totality of the circumstances in making a credibility determination, including: (1) the applicant's demeanor, candor, or responsiveness; (2) the plausibility of the applicant's account; and (3) inconsistencies, inaccuracies, or falsehoods related to the applicant's statements, witnesses' statements, and other evidence in the record, regardless of whether they relate to the heart of the applicant's claim.[3] 8 U.S.C.

---

**2.** To the extent Petitioner presents any arguments before this Court related to these issues, she failed to exhaust those issues by not raising them before the BIA. *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250–51 (11th Cir. 2006).

**3.** Because Petitioner filed her asylum application on February 27, 2013, the READ ID Act governs her claim. *See Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1231 (11th Cir. 2006) ("In the Real ID Act of 2005, Congress amended the law regarding credibility determinations for

§ 1158(b)(1)(B)(iii). "Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by specific, cogent reasons or was not based on substantial evidence." *Ruiz*, 440 F.3d at 1255 (quotations and alteration omitted).

Here, substantial evidence supports the BIA's and IJ's adverse credibility determination. The BIA and IJ properly identified inconsistencies in Petitioner's written statements and testimony regarding her alleged abortion in 1999. For starters, Petitioner did not mention ever having an abortion, let alone a forced abortion, in her asylum application and accompanying written statement. In fact, she did not mention the 1999 abortion until after her asylum case was referred to the IJ, and then provided inconsistent statements regarding the circumstances surrounding the abortion. Although she averred in her March 2015 statement that officials knocked on her door and took her with them to undergo the abortion, she said nothing about officials coming to her door in her earlier statement provided in May 2014. At the merits hearing, Petitioner initially testified that officials used force to open the door before taking her to the hospital to undergo an abortion. But when pressed on this point later, Petitioner testified that the officials knocked on the door and her mother opened it. Petitioner then stated for the first time that the officials "dragged [her] into the car."

Further, as noted by the IJ and BIA, Petitioner's husband provided inconsistent statements regarding when he learned that Petitioner had undergone an abortion. In his written statement, Petitioner's husband stated that his wife told him about the abortion one week before she appeared in the Atlanta Immigration Court on May 12, 2014. However, during his testimony at the merits hearing, he vacillated between stating that he learned of the abortion a few days prior to the May 2014 hearing and that he knew about the abortion before he and his wife arrived in the United States in 2012. Indeed, at one point, he stated that he and his wife came to the United States as tourists intending to apply for political asylum based on her previous abortion, suggesting that he knew of the abortion before arriving in the United States in 2012.

The BIA and IJ also relied on the discrepancies between Petitioner's and Petitioner's husband's testimony regarding the circumstances surrounding her pregnancy with their second child in 2012. Petitioner's husband testified that they went into hiding when she was pregnant with their second child because a neighbor had reported the pregnancy to the local residential committee. He stated that they hid in many places, including at the home of Petitioner's relative who lived in another province, as well as in Thailand, Malaysia, and Saipan. Yet, in Petitioner's testimony and written statements, she never mentioned that a neighbor reported her pregnancy to the residential committee. Instead, she explained in her initial statement that she came to the United States because she was worried that she would be forced to undergo an induced labor like the wife of her former classmate. We are not persuaded by Petitioner's argument that the inconsistencies between her testimony and that of her husband cannot support an adverse credibility determination, as we have held that as little as one internal inconsistency and one omission supports an adverse credibility determination. *See Xia v. U.S. Att'y Gen*, 608 F.3d 1233, 1240–41 (11th Cir. 2010) (holding that substantial evidence supported an adverse-credibility de-

applications for asylum and withholding of removal filed after May 11, 2005.").

termination where there was just one internal inconsistency and one omission).

Moreover, although Petitioner offers some plausible explanations for the inconsistencies identified by the BIA and IJ—including that her testimony was consistent despite the fact that she added additional details as the case progressed, that she did not mention her abortion at the outset of her case because she was afraid to tell her husband, and that her husband's testimony was the result of interpretation difficulties—none of these explanations compel reversal. *See Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1233 (11th Cir. 2006) (explaining that petitioner's tenable explanations for implausible aspects of his claim did not compel reversal); *Ruiz*, 440 F.3d at 1255.

Because the BIA and IJ provided specific and cogent reasons for finding Petitioner not credible and those reasons are supported by the record, substantial evidence supports the BIA's and IJ's decision denying Petitioner's asylum claim. *Ruiz*, 440 F.3d at 1255.[4] Accordingly, the petition for review is denied.

**PETITION DENIED.**

---

4.  Because the BIA concluded that Petitioner waived any argument that the IJ erred by concluding that she failed to sufficiently corroborate her claim, our review of Petitioner's asylum claim is limited to the BIA's and IJ's adverse credibility determination. *See Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016) (explaining that issues not decided by the BIA are not properly before this Court).