[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12201
Non-Argument Calendar
_____

Agency No. A208-280-454


GLENDA ROSIBEL MOLINA-RIVERA,
JOSTIN DANERY CASTRO-MOLINA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(February 5, 2018)

Before MARCUS, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Glenda Rosibel Molina-Rivera and her minor son, Jostin Danery Castro-Molina, who are natives and citizens of Honduras, seek review of the final order of the Board of Immigration Appeals (BIA) affirming the denial by the Immigration Judge (IJ) of Molina-Rivera's application for asylum pursuant to the Immigration and Nationality Act (INA) § 208(a), 8 U.S.C. § 1158(a), withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), 8 C.F.R. § 208.16(c).  The BIA affirmed the IJ's denial of Molina-Rivera's application based on its conclusions that she was not credible, had failed to establish a nexus between the alleged harm and a statutorily protected ground, and had failed to establish that she would, more likely than not, be subjected to torture with the acquiescence of a public official upon her return to Honduras.

We review the BIA's decision as the final judgment in an immigration appeal.  *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016) (per curiam).  When the BIA adopts or explicitly agrees with the IJ's findings or reasoning, we review both the BIA and the IJ to the extent of the adoption or agreement.  *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) (per curiam).  Here, because the BIA did not explicitly agree with or adopt the IJ's

reasoning, we will review only the BIA's decision.  *See Gonzalez*, 820 F.3d at 403;

*Singh*, 561 F.3d at 1278.

We review factual determinations, including credibility determinations,

under the substantial evidence test.  *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1254–

55 (11th Cir. 2006) (per curiam).  We must affirm the BIA's decision "if it is

supported by reasonable, substantial, and probative evidence on the record

considered as a whole."  *Id*.  We will view the record evidence "in the light most

favorable to the agency's decision and draw all reasonable inferences in favor of

that decision."  *Id.* at 1255.  Accordingly, in order for us to conclude that a finding

of fact should be reversed, we must determine that the record "compels" reversal.

*Id*.  "[T]he mere fact that the record may support a contrary conclusion is not

enough to justify a reversal."  *Id.*

Credibility is judged using a totality of the circumstances test, and a trier of

fact may base a credibility determination upon several factors, including the

witness's demeanor and candor, the inherent implausibility of the witness's

account, the internal consistency of the witness's own statements and the

consistency of those statements with other evidence in the record, and any

inaccuracies or falsehoods contained in the testimony.  INA § 208(b)(1)(B)(iii), 8

U.S.C. § 1158(b)(1)(B)(iii).  The trier of fact may consider inconsistencies,

inaccuracies, or falsehoods without regard to whether they go to the heart of the

3

applicant's claim. *Id*. "Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments." *Ruiz*, 440 F.3d at 1255. An applicant's "tenable" explanation of the implausible aspects of her claim do not necessarily compel reversal of an adverse credibility determination, especially if there is a lack of corroborating evidence. *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1233 (11th Cir. 2006) (per curiam). Moreover, an adverse credibility finding must be based on the record, not on speculation or conjecture. *Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1278 (11th Cir. 2009).

An applicant's credible testimony alone may be sufficient to sustain her burden of proof in establishing her eligibility for relief from removal. *Ruiz*, 440 F.3d at 1255. On the other hand, an adverse credibility determination alone may be sufficient to support the denial of relief, though such determination does not alleviate the burden to consider the other evidence presented by the applicant. *Id*. If an applicant produces evidence beyond her own testimony, it is not sufficient to rely solely on the adverse credibility finding in denying the application. *Id*. Once an adverse credibility determination has been made, the burden is on the applicant to show that the determination was not supported by "specific, cogent reasons" or was not based on substantial evidence. *Id*.

In order to establish eligibility for asylum, the applicant must produce specific and credible evidence to demonstrate (1) past persecution on account of a statutorily protected ground, or (2) a well-founded fear of future persecution on account of a statutorily protected ground. *Id.* at 1257; 8 C.F.R. § 208.13(a), (b).  If the applicant demonstrates past persecution, there is a rebuttable presumption that she has a well-founded fear of future persecution. *Ruiz*, 440 F.3d at 1257; 8 C.F.R. § 208.13(b).  If the applicant cannot show past persecution, then she must "demonstrate a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable." *Ruiz*, 440 F.3d at 1257.  The subjective component can be proved by an applicant's credible testimony that she genuinely fears persecution, while the objective component can be fulfilled either by establishing past persecution or establishing that there is a good reason to fear future persecution. *Id*.  If an individual subject to removal is granted asylum, that individual's child, if accompanying her, may also be granted asylum, even if the child is not otherwise eligible.  INA § 208(b)(3)(A), 8 U.S.C. § 1158(b)(3)(A).

Persecution is an "extreme concept" requiring more than a few isolated incidents of verbal harassment or intimidation, and mere harassment does not amount to persecution. *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1008 (11th Cir. 2008).  In determining whether an individual subject to removal has suffered past persecution, the IJ must view the record as a whole and consider the

cumulative effect of the allegedly persecutory acts. *Id.* There is no rigid requirement of physical injury. *Id.*

The applicant must also demonstrate that a statutorily enumerated ground "was or will be at least one central reason for persecuting" her. INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i). Evidence that is consistent with acts of private violence or the petitioner's failure to cooperate with guerillas, or that merely shows a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground. *Ruiz*, 440 F.3d at 1257–58.

An applicant seeking withholding of removal must show that her "life or freedom would be threatened in that country because of [her] race, religion, nationality, membership in a particular social group, or political opinion." INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). This showing can also be made by establishing past persecution or a likelihood of future persecution upon removal based on a protected ground. *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013) (per curiam).

An individual subject to removal may obtain CAT relief if she establishes that it is more likely than not that she would be tortured[1] if removed to the

---

[1] Under 8 C.F.R. § 208.18(a)(1), "Torture" is

proposed country of removal. *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004); 8 C.F.R. § 208.16(c)(2). Acquiescence requires that a public official, "prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene and prevent such activity." 8 C.F.R. § 208.18(a)(7).

Here, the BIA offered "specific, cogent reasons" for its adverse credibility finding and substantial evidence supports that finding. *See Ruiz*, 440 F.3d at 1255. The BIA identified three bases supporting the IJ's adverse credibility determination: (1) the inconsistencies in Molina-Rivera's testimony regarding when the gang's threats and extortionate demands began, (2) Molina-Rivera's embellishment regarding the length of her relationship with Castillo, and (3) Molina-Rivera's denial of knowledge regarding whether other businesses in her city were extorted by the gang.

With respect to the first basis, the record reflects several inconsistencies regarding when the gang's threats and extortionate demands began. Molina-Rivera testified at the removal hearing that the gang began extorting her mother's business

any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

7

when it opened in 1999, but also testified that the extortion began in 2001, after a gang member raped her sister.  Her written supplement to her initial application indicated that her "real problems" began in 2004, as a result of Danny's family's anger about her mother's relationship with Lito.  During her testimony at the removal proceeding, she stated that the extortion began prior to her mother's relationship with Lito, but death threats began in 2004.  She also stated that she believed that Danny was involved in the gang's extortion, which began prior to her mother's relationship with Lito, but that she did not notice that Danny was associated with the gang until 2004, after the relationship began.  Molina-Rivera's sister indicated that the extortion began in 2002.  As a whole, the record contained several inconsistencies regarding when the gang's threats and extortion began— 1999, 2001, 2002 or 2004—and regarding what motivated the threats and extortion—the fact that Molina-Rivera's mother opened a business, the fact that Molina-Rivera's sister was raped, or that fact that Molina-Rivera's mother began a relationship with Lito.

Molina-Rivera explained these inconsistencies by arguing that the fact that the gang's extortion began before her mother's relationship with Lito does not contradict the fact that the relationship resulted in death threats against her family—a separate matter from the gang's extortion.  However, substantial evidence supports the BIA's conclusion that Molina-Rivera testified inconsistently

8

regarding the circumstances surrounding the gang's threats and extortion, and all inconsistencies, regardless of whether they go to the heart of the claim, are relevant to the overall credibility determination.   *See* INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii).   Moreover, even if Molina-Rivera's explanation may be tenable, that alone is not sufficient to support a reversal of the credibility finding. *See Chen*, 463 F.3d at 1233.   Accordingly, these inconsistencies support the finding that Molina-Rivera was not credible.  *See id.*

With respect to the second basis for the adverse credibility finding, Castillo stated in his affidavit that he had known Molina-Rivera for 15 years.  In her testimony at the removal hearing, Molina-Rivera initially stated that she had known Castillo for six or seven years, but eventually admitted that she had met him in 2014, only two years before the hearing.  She also acknowledged that she had seen him only a few times.   Castillo's and Molina-Rivera's exaggerations regarding the length of their relationship constitute embellishments and support the finding that Molina-Rivera was not credible.  *See Ruiz*, 440 F.3d at 1255.  Molina-Rivera attempts to explain her embellishment by stating that she was confused during her testimony.  This explanation, while arguably tenable, does not, on its own, compel reversal of the credibility determination.  *See Chen*, 463 F.3d at 1233.

With respect to the third basis, the evidence that Molina-Rivera presented indicated that Honduras was dominated by criminal gangs.  That fact, which was

contained in the record and not merely speculation or conjecture, provided a reasonable basis for the BIA to conclude that Molina-Rivera would have known whether other businesses were extorted. *See Tang*, 578 F.3d at 1278. Thus, substantial evidence supports the conclusion that this portion of Molina-Rivera's testimony was implausible. Accordingly, the record does not compel reversal of the adverse credibility finding. *See Ruiz*, 440 F.3d at 1255.

Moreover, as to the merits of her asylum and withholding of removal claims, the record does not compel reversal of the finding that the gang's threats and assaultive conduct against Molina-Rivera were motivated by criminality and the gang's desire to extort the family business, rather than her membership in her family as a particular social group. The totality of evidence presented suggests that crime and violence at the hands of the gangs were common in Honduras. Molina-Rivera's own testimony, and the statements of her mother and sister, indicated that she and her family had been victims of the gang's crimes—namely, extortion and assault—prior to her mother's relationship with Lito, which is the event that allegedly motivated the gang to target Molina-Rivera as a result of her membership in her family. These facts constitute substantial evidence supporting the agency's conclusion that Molina-Rivera was a victim of criminality, and that her family relationship was not a central reason motivating the gang's actions against her. *See* INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i); *Ruiz*, 440 F.3d at 1257.

10

Because asylum and withholding of removal both require a nexus between the alleged persecution and a protected ground, substantial evidence supports the conclusion that Molina-Rivera's claims for both kinds of relief fail on that basis. *See* INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.13(b); *Ruiz*, 440 F.3d at 1257.

Finally, the record does not compel reversal of the finding that Molina-Rivera would not, more likely than not, be subjected to torture with the consent or acquiescence of a public official upon her return to Honduras, and thus Molina-Rivera was not entitled to CAT relief. Molina-Rivera testified that she never filed a police report or attempted to alert law enforcement about the threats and extortion, and thus she could not show that the police had acquiesced to the gang's actions against her. The background evidence also indicated that the Honduran government had made attempts to control gang violence, though such attempts were largely unsuccessful. These facts constitute substantial evidence supporting the conclusion that Molina-Rivera had not established that a public official would acquiesce to her torture. *See* 8 C.F.R. § 208.18(a)(7).

Accordingly, we deny Molina-Rivera's petition.

**PETITION DENIED.**

11