[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12118
Non-Argument Calendar

_____

Agency No. A208-891-263

INGRY YINETH GIL FORERO,
LUCIANA PINTO GIL,
ANGIE KATERINE GIL FORERO,
LUISA YIRETH GIL FORERO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 5, 2021)

Before WILSON, ROSENBAUM, and LUCK, Circuit Judges.

PER CURIAM:

Angie Gil Forero and her sister, Ingry Gil Forero, natives and citizens of Colombia, petition for review of the Board of Immigration Appeals's decision to dismiss their appeal of the immigration judge's denial of their applications for asylum.[1]  We dismiss the petitions for lack of jurisdiction because the Gils failed to exhaust their administrative remedies on one of the independent reasons the immigration judge gave for denying their asylum claims.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2014, Angie Gil Forero met Yuber Caranton.[2]  Caranton told her a fake name, fake occupation, and that he was living with his uncle, Jhon Ruiz, a lieutenant police officer who was actually Caranton's romantic partner.  Angie and Caranton started dating and began living together within a few months.

Angie and Caranton were briefly homeless.  During that time, Angie's family lost contact with her and filed a police report.  They knew by then the truth about Ruiz and Caranton, and suspected that Ruiz was involved in her disappearance. Ingry and their mom filed a police report at the station where Ruiz was the boss.  The officers knew that Ruiz had romantic relationships with men and mocked Ingry and her mom.  The officers did not give them a copy of the report.

---

[1]  Because their last names are the same, and to avoid confusion, we will refer to the Gil sisters by their first names, Angie and Ingry.  Angie's minor daughter, Luciana Pinto Gil, is a derivative beneficiary of Angie's application.  Ingry's minor daughter, Luisa Yireth Gil Forero, is a derivative beneficiary of Ingry's application.

[2] Caranton's first name is spelled differently throughout the record.  Because Angie was closest to him, we use the spelling from her personal statement.

Angie became pregnant with Caranton's daughter. Around November 2015, Caranton told Angie that "he had to go to work for two weeks." While he was gone, Angie had the baby. Angie and Caranton never reunited, and their relationship ended. Angie later learned that in those two weeks, Caranton had been with Ruiz and had stolen a motorcycle, watches, money, and some papers from Ruiz.

After the theft, Ruiz began sending Angie insulting and threatening messages. He primarily sent the messages through Facebook, although he also called twice. Ruiz accused Angie of "taking [Caranton's] side" and of ending his romantic relationship with Caranton. He told Angie that because "he was in charge of the police, he had a lot of power" and could find her wherever she went. Ruiz threatened to make Angie "rot in jail," telling her "that he was going to take the little girl and she would disappear." This was "the worst thing that J[h]on Ruiz ever did to" Angie. He never physically harmed her. He did, however, go with three other police officers to where Angie was staying to search for Caranton and the things he stole from Ruiz. In searching, "[t]hey messed up everything, even the roof." After Angie moved to the United States, Ruiz continued sending her Facebook messages saying that he would find her.

After having the baby, Angie moved in with Ingry and her family. Ruiz then began making threatening calls and sending threatening messages through WhatsApp to Ingry. He was angry that she was helping Angie and told her to turn

3

over Caranton and Angie. He threatened Ingry's life, as well as her children, Angie, Caranton, and Angie's daughter.

A few days before leaving for the United States, Angie and Ingry filed a police report. They did not file it at the police station where Ruiz worked. The police told the Gils that they needed Ruiz's ID to process the complaint, but that they would take the complaint, speak with the chief of the police, and start the investigation. When the women filed the report, they already had their plane tickets and knew they would be in the United States during any investigation. Caranton was eventually arrested and was incarcerated at the time of the hearing.

The Gils applied for asylum because they were persecuted based on their membership in a particular social group, which they identified as "members of the Gil Forero family who are unable to escape their relationship with [Caranton]."[3] The immigration judge denied the Gils' applications for asylum because: (1) they did not provide corroborating evidence to support their asylum claims, even though it was readily available, see Yang v. U.S. Atty. Gen., 418 F.3d 1198, 1201 (11th Cir. 2005) ("The weaker an applicant's testimony, however, the greater the need for corroborative evidence."); (2) Ruiz's threats did not amount to past persecution; (3) they did not establish a nexus between the threats and their particular social

---

[3] The Gils also applied for withholding of removal and relief under the Convention Against Torture but these are claims are not part of their petitions for review.

4

group; and (4) they didn't establish a well-founded fear that the Colombian government would not protect them from Ruiz.

The board dismissed the Gils' appeal and adopted the immigration judge's reasons for denying their asylum applications. The Gils now petition for review of the board's decision.

## STANDARD OF REVIEW

We review the decision of the board as the final judgment, unless the board expressly adopted the immigration judge's order. Perez-Zenteno v. U.S. Att'y Gen., 913 F.3d 1301, 1306 (11th Cir. 2019). Where the board agrees with the immigration judge's reasoning, as here, we review the decisions of both the board and the immigration judge. Id.

We review the board's and the immigration judge's legal conclusions de novo. Gonzalez v. U.S. Att'y Gen., 820 F.3d 399, 403 (11th Cir. 2016). And we review factual findings under the substantial evidence test, viewing "the record evidence in the light most favorable to the agency's decision and draw[ing] all reasonable inferences in favor of that decision." Perez-Zenteno, 913 F.3d at 1306 (citation omitted). We accept the board's and the immigration judge's findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (citation omitted). To reverse factual findings, the record must not only support reversal, but compel it. Id.

## DISCUSSION

The Gils contend that the immigration judge's findings were not supported by substantial evidence because:  (1) corroborating evidence supporting the asylum applications would have been difficult, if not impossible, to obtain and should not have been required; (2) the record is replete with examples of oral and written threats and personal confrontations by Ruiz that amount to past persecution; (3) there was a nexus between Ruiz's persecution and their membership in a particular social group (members of the Gil family who were unable to escape their relationship with Caranton); and (4) the country reports for Colombia show that the Gils have a well-founded fear of returning.  We address each of these contentions below.

1.    Corroborating evidence.  Because they didn't raise it in their appeal to the board, we don't have jurisdiction to consider the Gils' argument that the immigration judge erred by requiring them to provide corroboration evidence.  As we've explained, "we lack jurisdiction to consider claims that have not been raised before the BIA."  Sundar v. Immigration & Naturalization Serv., 328 F.3d 1320, 1323 (11th Cir. 2003).  "[B]efore proceeding to federal court, an alien must exhaust his or her administrative remedies."  Amaya-Artunduaga v. U.S. Atty. Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (quoting Sundar, 328 F.3d at 1323).  Because the Gils didn't exhaust their administrative remedies by challenging the immigration judge's corroborating evidence finding before the board, we lack jurisdiction to

6

review this part of the Gils' petition. And because the lack of corroborating evidence was one of the immigration judge's independent reasons for denying the Gils' asylum claims, our lack of jurisdiction is fatal to their petition for review. We dismiss their petition but address their other arguments for the sake of completeness.

2.    Past persecution.    Ruiz's oral and written threats and in person confrontations and harassment did not amount to past persecution. "[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution." Sepulveda v. U.S. Atty. Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (quotation marks and brackets omitted) (concluding that evidence of the bombing of petitioner's workplace, menacing telephone calls, and threats made to the petitioner did not compel finding of past persecution).

3.    Nexus.    Substantial evidence supported the immigration judge's finding that there was no nexus between Ruiz's threats and the Gils' particular social group. The Gils testified that Ruiz's threats started after Caranton robbed Ruiz. Ruiz threatened the Gils so he could find Caranton and get back his money and documents. The threats weren't made because Angie was unable to leave her relationship with Caranton; they were made because Caranton stole from Ruiz and Ruiz was trying to find Caranton.

7

4.    <u>Well-founded fear.</u>    Finally, substantial evidence supports the immigration judge's finding that the Gils did not establish that they were unable to avail themselves of Colombia's judicial system.  See <u>Lopez v. U.S. Atty. Gen.</u>, 504 F.3d 1341, 1345 (11th Cir. 2007) ("[I]n order to satisfy her burden of establishing asylum eligibility, [the petitioner] must show not only past persecution or a well-founded fear of future persecution, but also that she is unable to avail herself of the protection of her home country.").  The Gils testified that they reported Ruiz's threats to the police just days before leaving for the United States—and after they had already bought plane tickets.  The police took the report and said it would be sent to the commander of all police in Colombia.  The commander, the police said, would review the report and investigate Ruiz if necessary.

## CONCLUSION

One of the reasons the immigration judge (and the board) denied the Gils' asylum claim was because they did not provide any corroborating evidence to support their testimony.  But the Gils did not appeal that part of the immigration judge's order to the board.  Because the Gils did not exhaust their administrative remedies on the immigration judge's corroborating evidence finding, we lack jurisdiction to review this part of the petition.  And because the immigration judge's corroborating evidence finding was an independent basis for denying the asylum claim, we must dismiss the Gils' petition.

**PETITION DISMISSED.**