[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12378
Non-Argument Calendar

_____

Agency No. A203-653-600

TAOHID HASNET AKASH,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 28, 2021)

Before ROSENBAUM, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Taohid Hasnet Akash seeks review of the Board of Immigration Appeals's

("BIA") order affirming the immigration judge's denial of his application for

asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and protection under the United Nations Convention Against Torture ("CAT"). Specifically, he challenges the immigration judge's adverse credibility finding, arguing that the inconsistencies in his testimony cited by the immigration judge were only minor disparities, most of which were cleared up upon further questioning. We disagree. Because substantial evidence supports the adverse credibility determination, we deny Akash's petition for review.

## I.     FACTUAL AND PROCEDURAL HISTORY

Akash, a native and citizen of Bangladesh, unlawfully entered the United States in June 2019 by swimming across the Rio Grande River from Mexico, where he was apprehended by the United States Border Patrol. Akash informed the Border Patrol agents that he had left Bangladesh because he was discriminated against on the basis of his religion by the Bangladeshi government and other religious groups. Based on this allegation, the agents referred his case to an asylum officer for a credible fear interview.

During his credible fear interview, Akash stated that he was a member of the Liberal Democratic Party ("LDP") and was persecuted for his political beliefs by members of the Awami League, which is the current political party in power in Bangladesh. He claimed that he received many threats from Awami League members and referenced three specific attacks that he endured. On June 25, 2018,

Awami League members attacked him. On November 15, 2018, Akash said that he was "severely" attacked by five Awami League members, who punched him in the ear and broke his leg. He recognized one of the attackers as an Awami League leader who worked with his cousin and lived down the road from him. He was hospitalized for three days following this attack. On November 18, 2018, after he was discharged from the hospital, Akash went to the police station to press charges against the members who attacked him. But the officers refused to accept his complaint and told him to leave. After he had returned home, Awami League members who had heard that he had attempted to report the prior incident to the police broke into the gate of Akash's residence, but they could not find him.

When asked by the asylum officer about his claims of religious persecution, Akash answered that he never mentioned religion to the Border Patrol agents and that his political beliefs were the only cause of his harm in his native Bangladesh.

Following the interview, on September 17, 2019, the Department of Homeland Security ("DHS") initiated removal proceedings against Akash. In the Notice to Appear, DHS charged removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien who at the time of his application for admission did not have a valid visa or an entry document, and under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. Akash, through counsel,

3

admitted to the allegations in the Notice to Appear and conceded his removability. He then applied for asylum and withholding of removal under the INA and CAT.

During his hearing, Akash claimed that he came to the United States because he feared for his life in Bangladesh due to his political preferences and his membership in the LDP. He claimed that he was first attacked by the Awami League on October 26, 2018, when he was attacked by two Awami League members as he left a LDP meeting. During the attack, he was pushed, slapped, and punched, resulting in a bloody lip and nose. He said that the attackers knew about his political preferences and membership because his cousin was the president of the Liberal Democratic Party in his "union area." But he later claimed that his cousin was instead a member of the Awami League. He then claimed that it was actually his brother who orchestrated the attack on him because he was angry with Akash. But he later clarified, explaining that it was his "cousin brother"—a cousin who he also calls his brother. When the immigration judge asked about these contradictions, Akash replied that he was nervous.

Akash then testified about the attacks on November 15 and 18, 2018. His testimony regarding these two attacks was largely the same as his statements during his credible fear interview. He claimed that he knew two of his attackers because they hung out with his cousin. He then testified that his aunt told him that, on November 24, 2018, some individuals came to her house looking for him. And he

4

had since been told that Awami League members still sometimes come to his house looking for him.

On cross examination, DHS counsel questioned Akash about various inconsistencies in his testimony and his prior interviews, including why he had not told the asylum officer about the October 26, 2018, attack. Akash responded that he had mentioned getting hurt on October 26 and that he had been attacked three times. When pressed on his claim to the asylum officer that the first attack was on June 25, 2018, he replied that he did not understand. Finally, when asked about his initial claim to Border Patrol agents that he was persecuted for his religion, Akash answered that he was never questioned upon his arrival and that his first interview was with the asylum officer.

After Akash's testimony, the immigration judge issued an oral decision denying his application for asylum, withholding of removal, and CAT protection. The immigration judge determined that Akash was not credible, citing to several inconsistencies throughout his testimony and other interviews, including: (1) the identity of and his relationship to the main persecutor in Bangladesh; (2) the political membership of that person; (3) the number and nature of the attacks that he suffered in Bangladesh; (4) the nature and severity of the injuries that resulted from those attacks; (5) the dates of those attacks; and (6) the underlying reason for the alleged persecution. The immigration judge further noted that Akash was evasive and

nonresponsive throughout his interviews and the proceedings and that he failed to provide any corroborating evidence to rectify the inconsistencies that were raised.

Akash appealed the immigration judge's determination to the BIA. He argued that the inconsistency in the dates of the attacks was only minor, that he corrected all other inconsistencies with his testimony, and that his statements relating to the heart of his claims were always consistent. He also raised a claim of ineffective assistance of counsel.

On May 29, 2020, the BIA affirmed and dismissed Akash's appeal. The BIA first denied his ineffective assistance claim, finding that he had failed to comply with the requisite procedural requirements to raise the claim. Additionally, the BIA explained that even if he had complied with those requirements, he failed to demonstrate evidence of prejudice.

The BIA then held that the immigration judge's adverse credibility determination was not erroneous, finding that the immigration judge properly considered the totality of the circumstances as Akash was evasive and his testimony was inconsistent. Specifically, the BIA noted that Akash was inconsistent about the root cause of the alleged persecution—whether religious or political—about the nature and severity of injuries he suffered at the hands of the Awami League members, about the dates of his attacks, and about his main persecutor in Bangladesh—how he was related to Akash and whether he was a member of Akash's

own party or the ruling party.  The BIA then noted that Akash never challenged or addressed the significant discrepancy between the record evidence of his interview with Border Patrol evidence and his claim that he was never interviewed.  Based on these inconsistencies and Akash's nonresponsive demeanor, the BIA found Akash to not be a credible witness.  As such, and because Akash had not pointed to any evidence in the record "which would independently establish his eligibility for asylum, withholding of removal, or protection under the [CAT] in the absence of credible testimony," the BIA agreed with the immigration judge that Akash was not eligible for asylum, withholding of removal, or CAT protection.  This timely appeal ensued.

## II.    STANDARD OF REVIEW

"We review the BIA's decision as the final judgment, unless the BIA expressly adopted the [immigration judge's] decision."  *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016).  To the extent that the BIA agrees with and adopts the immigration judge's reasoning, as is the case here, we review both decisions as to the agreement.  *Id.*

We review factual and credibility determinations under the substantial evidence test and conclusions of law *de novo*.  *Id.*; *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1230–31 (11th Cir. 2006).  Under the substantial evidence test, we will affirm the agency's "decision if it is supported by reasonable, substantial, and probative

evidence on the record considered as a whole." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005) (quoting *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001)). We only reverse an agency's decision when "the evidence 'compels' a reasonable fact finder to find otherwise." *Id.* (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992)). Under substantial evidence review, "[w]e view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1351 (11th Cir. 2009) (quoting *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc)). Administrative findings cannot be reversed simply because "the record may support a contrary conclusion." *Id.* (quoting *Adefemi*, 386 F.3d at 1027).

## III.   ANALYSIS

On appeal, Akash argues that the immigration judge's adverse credibility determination was not supported by substantial evidence. Specifically, Akash argues that the basis of the determination was merely minor inconsistencies that did not go to the heart of his claim and most of which were corrected, resulting in coherent, cogent, and consistent testimony. As such, according to Akash, his testimony was credible, and he therefore met his burden to establish eligibility for relief from removal.

8

The Attorney General may grant asylum to an alien who meets the INA's definition of a "refugee." *See* INA § 208(b)(1)(A), 8 U.S.C. § 1158(b)(1)(A). A refugee is:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). The applicant bears the burden of proving that he is a refugee. INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i). Using specific and credible evidence, an asylum applicant must demonstrate either past persecution on account of a statutorily protected ground or a well-founded fear of future persecution on account of such protected ground. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006). Past persecution requires an applicant to prove that he was persecuted and that it was based on a protected ground. *Kazemzadeh*, 577 F.3d at 1351.

"If an alien's testimony is credible, it may be sufficient, without corroboration, to satisfy his burden of proof in establishing his eligibility for relief from removal." *Chen*, 463 F.3d at 1231. But, at the same time, the "denial of asylum relief . . . can be supported solely by an adverse credibility determination, especially if the alien fails to produce corroborating evidence." *Id.*

9

A credibility determination may be based on all relevant factors and the totality of the circumstances, including: (1) the applicant's demeanor, candor, and responsiveness; (2) the plausibility of the applicant's account; (3) the consistency between the applicant's written and oral statements; (4) the internal consistency of each statement; (5) the consistency of the applicant's statements with other record evidence; and (6) any inaccuracies or falsehoods in statements, regardless of whether any inconsistency, inaccuracy, or falsehood touches the heart of the applicant's claim. INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii). In making an adverse credibility determination, the immigration judge must give specific and cogent reasons, at which point, the burden shifts to the applicant to demonstrate that the decision was not supported by such specific, cogent reasons or not based on substantial evidence. *Chen*, 463 F.3d at 1231. Tenable explanations for any inconsistencies alone may not be sufficient to compel reversal of an adverse credibility determination. *See id.* at 1233.

Here, substantial evidence supports the immigration judge's adverse credibility determination. As noted by the BIA, several inconsistencies existed that cast doubt on Akash's testimony and credibility. Significantly, Akash was inconsistent about the dates of the attacks and about the root cause of the alleged persecution in Bangladesh. At the border, he told officers that he was persecuted based on his religious beliefs, but in his interview with the asylum officer and during

10

his testimony, he stated that he was persecuted for his political views. He was further inconsistent about the nature and severity of injuries he suffered at the hands of the Awami League members—he told the asylum officer only about his leg injury, but during his testimony he also brought up a severe ear injury that he received from the members. He was also inconsistent about the political membership of his main persecutor as well as inconsistent about their relationship. There were also other issues with Akash's testimony beyond the inconsistencies. Contrary to Akash's contention, the immigration judge did consider his demeanor, specifically as it related to testimony about his ear injury. The immigration judge described Akash as evasive and nonresponsive.

Akash argues that these inconsistencies are only "minor" and merely "small disparities" that do not speak "to the heart of the asylum claim." But this argument ignores the applicable statutory standard, which permits a "trier of fact [to] base a credibility determination on . . . any inaccuracies or falsehoods in [the applicant's] statements, *without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor*." § 1158(b)(1)(B)(iii) (emphasis added); *see also Chen*, 463 F.3d at 1233. Moreover, we reject Akash's assertion that the inconsistencies noted can be characterized as "minor" or as falling outside the heart of his claims. The inconsistencies speak to

11

the root cause of the persecution and the timeline of the events that occurred—two significant aspects of Akash's claims.

Additionally, although Akash's explanations for some of the inconsistencies are tenable, "we cannot say, especially given the relative lack of corroborating evidence, that these explanations would compel a reasonable fact finder to reverse the [immigration judge's] credibility determination." *See Chen*, 463 F.3d at 1233. And Akash provided no explanation for two of the more significant inconsistencies—his differing statements about whether the persecution resulted from his religious beliefs or his political views and his inconsistent testimony related to the timing and severity of the attacks. Because the adverse credibility determination is supported by substantial evidence and because Akash submitted no corroborating evidence in support of his claims, he has failed to meet his burden of proof for relief. Substantial evidence supports the BIA and immigration judge's denial of asylum.

Further, substantial evidence supports the BIA and immigration judge's denials of withholding of removal and CAT protection. The standards of proof that the applicant bears to demonstrate eligibility for withholding of removal and for protection under CAT are higher than that for asylum. *See Sepulveda*, 401 F.3d at 1232 (explaining that an alien seeking withholding of removal "bears the burden of demonstrating that it is 'more likely than not' [he] will be persecuted or tortured

upon being returned to [his] country," based on a protected ground (quoting *Fahim v. U.S. Att'y Gen.*, 278 F.3d 1216, 1218 (11th Cir. 2002)); *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004) (stating that, for CAT relief, "the burden of proof is on the applicant . . . to establish that it is more likely than not that he . . . would be tortured if removed to the proposed country of removal" (quoting 8 C.F.R. § 208.16(c)(2)). Because Akash was unable to meet his burden to prove that he was eligible for asylum, his claims for withholding of removal and CAT relief likewise fail. We therefore deny his petition.

## IV.    CONCLUSION

Because the immigration judge's adverse credibility determination is supported by substantial evidence, we deny Akash's petition for review.

**PETITION DENIED.**