[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-11578

Non-Argument Calendar

_____

YOUNES JAMES JERKE,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A094-697-200

_____

Before JILL PRYOR, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Younes James Jerke petitions for review of an order of the Board of Immigration Appeals affirming an immigration judge's order of removal and denial of his application for deferral of removal under the Convention Against Torture. We dismiss the petition for lack of jurisdiction.

## I.

Jerke entered this country from Sudan in 2006, when he was about 15 years old, as a beneficiary of his father's status as a refugee. He became a lawful permanent resident of the United States two years later. In 2018, however, the Department of Homeland Security initiated removal proceedings.

The government's Notice to Appear charged that Jerke was a native and citizen of Sudan, and that he was removable because of his conviction for armed robbery, which was an aggravated felony under the Immigration and Nationality Act (INA). *See* 8 U.S.C. §§ 1101(a)(43)(F)–(G), 1227(a)(2)(iii). Jerke, appearing pro se before an immigration judge, admitted that he was a native and citizen of Sudan, as charged. He also admitted that he had been convicted of armed robbery in Georgia and received a sentence of ten years, with five years to serve in confinement and the remainder on probation, for that offense. Based on those admissions, the immigration judge sustained the charges against Jerke. Jerke had

not designated a country of removal, so the immigration judge designated Sudan, the country of Jerke's citizenship, as the country to which Jerke would be removed. *See* 8 U.S.C. § 1231(b)(2)(A), (D).

Jerke later submitted an application for asylum and withholding of removal, which he completed without the assistance of an attorney. He sought deferral of removal under the United Nations Convention Against Torture (CAT),[1] stating that he feared that if he returned to his home country, he would be tortured or killed. On the application, he listed his country of birth, his nationality at birth, and his present nationality and citizenship all as "Sudan."

After Jerke submitted his application for asylum and withholding of removal, he retained counsel. At his first appearance, Jerke's attorney notified the immigration judge that he would seek to introduce documentation regarding South Sudan at the merits hearing. Counsel acknowledged that Jerke was born in Sudan (not South Sudan) and that South Sudan had not been designated as the country of removal, but he stated that "we would like to introduce documentation about southern Sudan so we can cover both bases."

---

[1] United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, art. 3, Dec. 10, 1984, 1465 U.N.T.S. 85; *see* 8 CFR § 208.17. To be eligible for relief pursuant to CAT, an applicant must show "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2).

At the final removal hearing, Jerke indicated for the first time that he believed that his previous statement that he was a citizen of Sudan was "a misunderstanding," and that he wished to amend his application for relief from removal to state that he was "from South Sudan, not Sudan." He clarified, however, that he did not want to designate South Sudan as the country of removal or as a potential alternate country of removal, and at the beginning of the hearing, he confirmed that he did not intend to withdraw his plea admitting that he was a citizen and national of Sudan. The district court denied his request to amend his application to change his nationality.

Jerke and his father testified at the final hearing before the immigration judge. As relevant here, Jerke testified that he was born in 1991 in Khartoum, which was and still is part of northern Sudan. His family was part of the Mabaan tribe in South Sudan, but they had moved to Khartoum from South Sudan before Jerke was born. Jerke had never been to South Sudan, and although he belonged to the Mabaan tribe, he did not know any Mabaan people outside of his own family. He understood that conditions in South Sudan were bad, and he had been told that his grandparents had been killed there and his sister had been kidnapped there and was never seen again.

Jerke and his family remained in Khartoum until Jerke was about 13 years old. Jerke was unable to provide detailed testimony about his childhood in northern Sudan, but he described the conditions there as "horrible." His family lived in a camp in Khartoum where they did not always have enough food or water. In 1999, his

father left for work one day and never came back; Jerke thought he had died. After his father's disappearance, government officers and soldiers aligned with the government came to his family's home three times and questioned them about where his father had gone. Each time, the officers and soldiers beat Jerke's mother, beat Jerke and his brother with sticks, and tied his brother to a tree and whipped him. Once, they arrested his brother and kept him for about a month, and on another occasion, they arrested his mother and kept her for a day. No one in the family knew where Jerke's father had gone, so they were unable to answer the men's questions. In 2004, Jerke's mother took him and his siblings and moved first to Egypt and then, in 2006, to the United States.

Jerke's father, James Jerke, testified about Jerke's family history and his own experience in—and disappearance from—Sudan. He testified that he was born in southern Sudan in 1959 as a member of the Mabaan tribe. He fled from southern Sudan to Khartoum after the second Sudanese civil war began in 1983. He remained in Khartoum until 1999, when he was arrested as a suspected sympathizer with southern Sudanese rebels.

At the time, James was working for Save the Children, an American humanitarian aid organization. Part of his job was to travel to camps located along the border between Sudan and what is now South Sudan to document the number of people and living conditions in the camps. This work for an American organization, along with James's southern Sudanese nationality and Mabaan tribal affiliation, led military officials in one camp to suspect that he

was spying for southern rebels. They imprisoned him and beat, tortured, and interrogated him nightly for over a month. After being detained for about two and a half months, James escaped with the help of a sympathetic prison staff member. He made his way to Egypt and was eventually admitted to the United States in 2002 as a refugee. His wife and children, including Jerke, joined him in the United States four years later.

James testified that because he was born in southern Sudan, he became a citizen of South Sudan when that country seceded from Sudan in 2011. James believed that Jerke would also be considered a citizen of South Sudan, rather than Sudan, because of James's birth nationality and his and Jerke's Mabaan ethnicity. He testified that if Jerke were deported to Sudan, the Sudanese government could refuse to accept him. If Jerke were then removed to South Sudan, James believed that Jerke would disappear. He explained that Mabaan people generally were viewed as aligned with the rebels in South Sudan, and Jerke's older brother, who had the same last name, was vocal on social media about his support for the South Sudanese opposition group.

Based on his father's testimony, Jerke requested leave to withdraw his plea admitting that he was a citizen of Sudan. He contended that the testimony showed that he was a citizen of South Sudan, and that he had presented sufficient evidence that he would be tortured in South Sudan to prevent his removal to that country.

The immigration judge denied his request, finding that Jerke had not presented sufficient evidence that he was not a citizen of Sudan to justify allowing him to withdraw his admission to that charge. The immigration judge pointed out that Jerke was born in Khartoum, which was and still is in Sudan, and his nationality was listed as Sudanese on his lawful permanent resident card and on the application for asylum and withholding of removal.

The immigration judge denied Jerke's application for asylum and withholding of removal. The judge determined that—as Jerke conceded—his conviction for an aggravated felony rendered him ineligible for any form of relief from removal except deferral under CAT. And the immigration judge found that Jerke was not eligible for CAT relief because he had not shown that he would more likely than not be tortured if he were removed to Sudan, especially given the recent change in government and country conditions there.

The immigration judge also found that Jerke had not shown that it was more likely than not that the Sudanese government would accept him from the United States and then force him to relocate to South Sudan. The judge noted that if Sudan refused to accept Jerke and the government named South Sudan as an alternate country of removal, Jerke would be given an opportunity to seek deferral of removal to South Sudan under CAT at that time.

Jerke appealed to the Board of Immigration Appeals, arguing that the immigration judge erred in denying his request to change his claimed nationality to South Sudanese. He contended

that if the immigration judge had found that he was a citizen of South Sudan, it would have had to change the designated country of removal—and therefore, the focus of the CAT analysis—to South Sudan.  This change would have affected the ruling on his application for CAT relief, he argued, because while changed circumstances in Sudan made it less likely that he would be tortured if he were deported to that country, the risk of torture if he were deported to South Sudan remained high.  He asked the Board to remand the case with instructions to the government to amend the Notice to Appear and designate South Sudan as the country of removal, so that the immigration judge could consider whether he was eligible for deferral of removal to South Sudan under CAT.

The Board rejected Jerke's argument.  It explained that the immigration judge had not clearly erred in finding that the evidence before it supported the government's charge that Jerke was a citizen of Sudan, regardless of whether Jerke admitted that fact. The Board concluded that Jerke's proposed change to his plea would therefore have been futile, and the immigration judge did not err in denying his request.  This petition for review followed.

## II.

We review the Board's decision as the final agency decision, and we also review the immigration judge's decision to the extent that the Board expressly adopts or agrees with it. *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016).  We review whether we have subject matter jurisdiction de novo. *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015).

21-11578                Opinion of the Court                9

We must evaluate our own jurisdiction at the outset. *See id.* By statute, we lack jurisdiction "to review any final order of removal against an alien who is removable by reason of having committed" an aggravated felony, except to the extent that the petitioner raises a constitutional claim or a question of law. 8 U.S.C. §§ 1252(a)(2)(C), (D), 1227(a)(2)(A)(iii). Reviewable questions of law include challenges to "the application of a legal standard to undisputed or established facts." *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1067 (2020). Factual challenges to a final order of removal, on the other hand, are not exempt from the jurisdictional bar under § 1252(a)(2). *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1690 (2020); *Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1272 (11th Cir. 2020) (en banc), *cert. granted*, 141 S. Ct. 2850 (June 28, 2021) (No. 20-979).

The jurisdictional bar that prohibits our review of factual challenges to a final order of removal does not apply to CAT orders, since a CAT order does not affect the validity of the order of removal and does not merge into the removal order. *Nasrallah*, 140 S. Ct. at 1690–92. We therefore retain jurisdiction to review both factual and legal challenges to the agency's decision on an application for deferral of removal under CAT. *Id.*

In his petition, Jerke argues that the immigration judge erred by denying him the opportunity to "correct" his country of nationality or citizenship from Sudan to South Sudan before proceeding with the merits hearing, and by ordering him removed to Sudan even though he is not a citizen or national of that country. This

argument does not raise any questions falling within our jurisdiction.

As to the final order of removal, Jerke's argument is essentially that the immigration judge erred when it determined that the evidence supported the government's charge that he was a citizen and national of Sudan.  He has never contested the agency's conclusion that he was removable based on his conviction for armed robbery, and he does not raise any other legal or constitutional challenge to the removal order that is not subject to the jurisdictional bar for criminal aliens.  *See* 8 U.S.C. § 1252(a)(2)(C), (D).  He references the statutory scheme for designating the country of removal, but he does not contend that the agency erred in the application of that statute to undisputed facts.  *See Guerrero-Lasprilla*, 140 S. Ct. at 1067.  Instead, while he agrees that the immigration judge was required to designate the country of which he was "a subject, national, or citizen" as the country of removal, he argues that the immigration judge ignored evidence showing that he was actually a national of South Sudan.  8 U.S.C. § 1231(b)(2)(D).

Specifically, he argues that his father's testimony showed that he was South Sudanese, and his earlier admission that he was a citizen of Sudan was not determinative in light of his pro se status and evidence that he was unsure of his nationality after the secession of South Sudan.  He contends that "the place of birth alone should not be conclusive as to where to remove an alien where circumstances might argue in favor of a different country," and that the immigration judge should have allowed him "to correct his

21-11578              Opinion of the Court                    11

previous pro se pleadings to claim his South Sudanese nationality before proceeding on the merits."

At bottom, Jerke's argument is that the immigration judge erred in weighing evidence that he was born in Sudan more heavily than his father's testimony and evidence of his own uncertainty about his nationality when it found that he was a citizen of Sudan. He does not contend that the immigration judge applied the wrong legal standard in denying his request to amend his plea and his CAT application, but only that the denial was based on an incorrect factual finding regarding his true nationality. Arguments like this one that are concerned with the "relative weight accorded to the evidence" by the agency do not present a constitutional question or a question of law. *Fynn v. U.S. Att'y Gen.*, 752 F.3d 1250, 1253 (11th Cir. 2014). Because Jerke is removable based on his conviction for an aggravated felony, we lack jurisdiction to consider his factual challenge to the final order of removal. 8 U.S.C. 1252(a)(2)(C); *see* 8 U.S.C. § 1227(a)(2)(A)(iii).

Finally, we note that Jerke has not raised any factual or legal challenges to the order denying his application for asylum, withholding of removal, or deferral of removal under CAT. He has never challenged the agency's determination that he was ineligible for asylum or withholding of removal under the INA because of his conviction for an aggravated felony. *See* 8 U.S.C. § 1158(b)(2)(A)(ii), (B)(i); *id.* § 1231(b)(3)(B)(ii). Nor has he made any meaningful argument contesting the agency's finding that he was not likely to be tortured if he were removed to Sudan or

contending that the agency committed any legal error in deciding that he was not eligible for deferral of removal to Sudan under CAT.

## III.

Jerke seeks review of a final order of removal on the ground that the immigration judge improperly discounted evidence of his family ties to South Sudan when it determined that he was a citizen of Sudan and designated Sudan as the country of removal. Because Jerke is removable under 8 U.S.C. § 1227(a)(2)(A)(iii) based on his conviction for an aggravated felony, we lack jurisdiction to consider this factual challenge to his final removal order. 8 U.S.C. § 1252(a)(2)(C). We therefore dismiss the petition.

**PETITION DISMISSED.**