[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12878
Non-Argument Calendar
_____

Agency No. A094-284-274


ANTONIO A. GONZALEZ,
a.k.a. Antonio Gonzales Jimenez,
a.k.a. Antonio Jimenez,
a.k.a. Antonio Gonzales,
a.k.a. Antonio A. Gonzales,

                                        Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                        Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(April 19, 2016)

Before TJOFLAT, WILLIAM PRYOR and FAY, Circuit Judges.

PER CURIAM:

Antonio Gonzalez seeks review of the final order of the Board of Immigration Appeals (the "BIA") denying his application for withholding of removal under the Immigration and Nationality Act (the "INA")[1] and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment (the "CAT").  Gonzalez argues that the BIA erred in concluding that he could be removed to Honduras because he was not a member of a "particular social group" entitled to protection under 8 U.S.C. § 1231(b)(3).  He argues that former members of the Mara-18 gang from Honduras are a "particular social group."  He likewise argues that the BIA erred in concluding that he was ineligible for relief under the CAT.  After careful review, we deny Gonzalez's petition.

I.

Antonio Gonzalez is a thirty-five-year-old native and citizen of Honduras. He came to the United States in 1997 when he was sixteen.  On December 21, 2010, the Department of Homeland Security ("DHS") issued Gonzalez a notice to appear, charging him as removable for being an alien in the United States without being admitted or paroled by an immigration officer, in violation of 8 U.S.C.

---

[1] 8 U.S.C. § 1101 et seq.

§ 1182(a)(6)(A)(i).  At a hearing held before the Immigration Judge ("IJ") in March 2011, Gonzalez admitted the allegations contained in the notice to appear and conceded that he was removable.  Gonzalez was subsequently charged in state court with possession of cocaine with intent to sell and possession of drug paraphernalia.  He pled guilty to the charges and was sentenced to time served.  He was then served with an additional charge of removability under 8 U.S.C. § 1182(a)(2)(A)(i)(II), as an alien who committed a controlled substance violation. He conceded that charge to the IJ.

In September 2012, Gonzalez filed an application for asylum, withholding of removal, and relief under the CAT.  He argued that he was likely to be tortured if he returned to Honduras based on his status as a former member of the Mara-18 gang.  Gonzalez argued that this status entitled him to asylum and withholding of removal because it qualifies as a "particular social group" under 8 U.S.C. § 1158(2)(A) and 8 U.S.C. § 1231(b)(3).

In support of his application, Gonzalez submitted a memorandum asserting that he had a well-founded fear of persecution if he returned to Honduras.  He, as well as friends and family, testified before the IJ and provided information about Gonzalez's background and the likely consequences of his forced return to Honduras.  When Gonzalez was fourteen, he joined the Mara-18 gang.  He had been working as a welder.  He argues that he only joined the Mara-18 gang to get

protection from a rival gang, MS-13. He was initiated into Mara-18 through a ritual beating and received a tattoo specific to the Mara-18. He remained in the gang for about two years before coming to the United States. During his time in the gang, Gonzalez testified that he committed various crimes, such as throwing "candiles" (Molotov cocktails) at houses, robbery, and gang-related fighting. He also made "chimbas," or makeshift pistols, for gang members through his background in welding. He testified that he only committed these crimes under a sense of coercion, because disobedience would result in severe mistreatment, potentially even death.

After he was badly beaten in a fight with the rival gang, MS-13, Gonzalez decided to leave Mara-18 and come to the United States. He testified that leaving the gang is punishable by death, and the only place he would be safe was in the United States. Gonzalez argues that he could be targeted with potentially lethal violence from three different sources: his former gang, Mara-18; his former rival gang, MS-13; and Honduran law enforcement. Gonzalez submitted evidence regarding gang violence in Honduras and evidence that law enforcement officers in Honduras were suspected of extra-judicially killing perceived gang-members in "death squads." Gonzalez argues that he will be recognized as a former Mara-18 member because of his tattoo, which he still bears, and his name, family association, and physical appearance.

4

The IJ issued an oral decision denying Gonzalez's petition.  The IJ concluded that Gonzalez's petition for asylum was time-barred.  He concluded that Gonzalez was not entitled to withholding of removal because he committed serious nonpolitical crimes in Honduras, which provides an exception to a finding of non-removability, 8 U.S.C. §1231(b)(3)(B)(iii), and did not show that he was a member of a "particular social group" under 8 U.S.C. §1231(b)(3).  He also concluded that Gonzalez presented insufficient evidence to merit relief under the CAT.

The BIA affirmed the IJ's decision.  Gonzalez explicitly declined to seek review of the IJ's determination that his application for asylum was time-barred and therefore treated the IJ's determination as final.  The BIA agreed that Gonzalez did not qualify for withholding of removal because "former Mara-18 gang-members" could not be a "particular social group" under the INA.  It concluded this for two reasons: first, the proposed group did not meet the "particularity requirement" for "particular social groups," and second, membership in a criminal organization cannot be the basis for protection under the INA given the Act's humanitarian purpose.  Finally, the BIA affirmed the IJ's decision that Gonzalez failed to provide sufficient evidence to qualify for relief under the CAT.  This petition followed.

II.

We review the BIA's decision as the final judgment, unless the BIA expressly adopted the IJ's decision.[2] *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009).  Where the BIA agrees with the IJ's reasoning, we review the decisions of both the BIA and the IJ to the extent of the agreement.  *Id.* Because the BIA did not expressly adopt the IJ's decision or rely on its reasoning, we will review only the BIA decision.

In a petition for review of a BIA decision, we review conclusions of law de novo and factual determinations under the substantial evidence test.  *Id.*  Whether an asserted group qualifies as a "particular social group" under the INA is a question of law.  *Malu v. U.S. Att'y Gen.*, 764 F.3d 1282, 1290 (11th Cir. 2014). We do not consider issues that were not reached by the BIA.  *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1369 (11th Cir. 2011).

A.

To qualify for withholding of removal, an applicant must establish that his "life or freedom would be threatened in [the] country [to which he would be removed] because of [his] race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A).  The applicant must show that it is more likely than not that he will be persecuted on account of a

---

[2] Gonzalez does not challenge the IJ's or BIA's determination that his application for asylum was time-barred.

protected ground if he returned to his home country. *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013) (per curiam).

Although we review the BIA's legal conclusions de novo, our "review of the BIA's interpretation is informed by the principle of deference articulated in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)." *Castillo-Arias v. U.S. Att'y. Gen.*, 446 F.3d 1190, 1195 (11th Cir. 2006) (quotation marks and citation omitted). The Supreme Court has held that the BIA's interpretation of ambiguous terms in the INA is entitled to deference under *Chevron* "through a process of case-by-case adjudication." *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425, 119 S. Ct. 1439, 1445, 143 L. Ed. 2d 590 (1999) (quotation marks and citation omitted). Under *Chevron*, "[w]hen a court reviews an agency's construction of the statute which it administers . . . [and] the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 842–43, 104 S. Ct. at 2781–82. "In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844, 104 S. Ct. at 2782.

We have previously held that the BIA's interpretation of the phrase "particular social group" in 8 U.S.C. § 1231(b)(3)(A) is entitled to

*Chevron* deference because the INA does not define the phrase and it is ambiguous. *Castillo-Arias*, 446 F.3d at 1196. Although we have held that a single-member, non-precedential decision issued by the BIA *is not* entitled to *Chevron* deference, single-member BIA decisions that rely on precedential BIA opinions *are* entitled to *Chevron* deference. *Quinchia v. U.S. Att'y Gen.*, 552 F.3d 1255, 1258 (11th Cir. 2008); *see also United States v. Mead Corp.*, 533 U.S. 218, 226–27, 121 S. Ct. 2164, 2171, 150 L. Ed. 2d 292 (2001).

In *Matter of Acosta*, the BIA first interpreted the phrase "particular social group" to mean "a group of persons all of whom share a common, immutable characteristic." *Matter of Acosta*, 19 I. & N. Dec. 211, 212 (BIA 1985), *overruled on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987). In subsequent decisions, the BIA has elaborated that a particular social group must also be "defined with particularity" and "socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014). Regarding the particularly requirement, the BIA has stated that "[t]he [proposed] group must also be discrete and have definable boundaries—it must not be amorphous, overbroad, diffuse, or subjective." *Matter of W-G-R-*, 26 I. & N. Dec. 208, 214 (BIA 2014).

Here, the BIA relied on two precedential BIA decisions to determine that Gonzalez was not a member of a particular social group as that phrase is used in

8 U.S.C. § 1231(b)(3)(A): *Matter of E-A-G-* and *Matter of W-G-R-*.  In *Matter of E-A-G-*, the BIA determined that membership in a gang could not qualify as a particular social group.  *Matter of E-A-G-*, 24 I. & N. Dec. 591, 596 (BIA 2008), *rejected on other grounds*, *Escamilla v. Holder*, 459 F. App'x 776, 786 (10th Cir. 2012).  Citing a Ninth Circuit decision, the BIA reasoned that current *or former* membership in a gang could not be the basis for relief under the INA; shared past experiences of violent, organized crime were not the kind of predicate experiences Congress had in mind in crafting the "particular social group" basis for relief.  *Id.* (citing *Arteaga v. Mukasey*, 511 F.3d 940, 945–46 (9th Cir. 2007)).  Therefore, relying on *E-A-G-*'s conclusion that former gang membership was not a cognizable particular social group, the BIA denied Gonzalez relief.

The BIA also held that Gonzalez's proposed group failed the particularity requirement.  In so concluding, it relied on *Matter of W-G-R-*, a case quite similar to this one.  In *Matter of W-G-R-*, the petitioner was a former member of an El Salvador branch of the Mara-18 gang and, after leaving the gang to come to the United States, feared for his life if he were forced to return to El Salvador.  *Matter of W-G-R-*, 26 I. & N. Dec. 208, 209 (BIA 2014).  The BIA denied the petition for withholding of removal because "former members of the Mara 18 gang in El Salvador who have renounced their gang membership" was not sufficiently particular.  *Id*. at 221.  The BIA reasoned that the group could include "persons of

9

any age, sex, or background" and is "not limited to those who have had a meaningful involvement with the gang and would thus consider themselves—and be considered by others—as 'former gang members.'" *Id.* It thus concluded that the proposed social group was too diffuse, broad, and subjective. *Id.* Relying on *W-G-R-*, the BIA here concluded that Gonzalez "has not explained how his proposed group of former gang members is defined with any greater specificity, such that it would constitute a cognizable particular social group under the Act."

Because the BIA decision relied on *Matter of E-A-G-* and *Matter of W-G-R-*, both of which were precedential decisions issued by a three-member panel of the BIA, the BIA's determination on both counts is entitled to *Chevron* deference. We do not think either conclusion, either of which is sufficient to deny the relief sought by Gonzalez, is an unreasonable interpretation of "particular social group" as used in 8 U.S.C. § 1231(b)(3)(A). Nor are we persuaded by the three other Circuits that have reached different conclusions regarding whether a former gang member is a member of a "particular social group." *See Martinez v. Holder*, 740 F.3d 902 (4th Cir. 2014); *Urbina-Mejia v. Holder*, 597 F.3d 360 (6th Cir. 2010); *Benitez Ramos v. Holder*, 589 F.3d 426 (7th Cir. 2009); *but see Cantarero v. Holder*, 734 F.3d 82, 85–87 (1st Cir. 2013) (holding that that the BIA's determination that former members of the Mara-18 gang in El Salvador are not a "particular social group" was entitled to *Chevron* deference). As an initial matter, those decisions were

decided prior to *Matter of W-G-R-*. In addition, neither the Fourth Circuit nor Seventh Circuit applied *Chevron* deference. The Fourth Circuit reasoned that a single-member BIA order was not entitled to *Chevron* deference. *Martinez*, 740 F.3d at 909–10. The Fourth Circuit was not constrained as we are, however, by our holding in *Quinchia* that single-member decisions that *rely* on precedential opinions *are* entitled to *Chevron* deference. *See Quinchia*, 552 F.3d at 1258. The Seventh Circuit opinion simply did not apply *Chevron* or give any sort of deference to the BIA. *See generally Benitez Ramos*, 589 F.3d. at 429–31.

The Sixth Circuit, although applying *Chevron*, dealt with a different issue than we deal with today. In *Urbina-Mejia*, the Sixth Circuit held that the BIA and IJ erred as a matter of law in concluding that former membership in a gang is not an "immutable" characteristic. *Urbina-Mejia*, 597 F.3d at 366–67. As mentioned above, sharing a common, immutable characteristic is a necessary, but not sufficient, condition to qualify as a particular social group under BIA precedent. An immutable characteristic under BIA decisions is one "that the members of a group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Matter of Acosta*, 19 I. & N. Dec. at 233. While being a current member of a gang could not be an immutable characteristic, the Sixth Circuit reasoned that being a former member is—former gang members should not be required to re-join their gangs. *Urbina-*

11

*Mejia*, 597 F.3d at 367.  We do not quarrel with that conclusion.  That decision, however, did not address the two separate grounds the BIA relied on here, and as such, does not persuade us that the BIA's conclusion in this case is unreasonable.  We find more persuasive the First Circuit's analysis in *Cantarero v. Holder*, 734 F.3d 82 (1st Cir. 2013), which we echo here.

In conclusion, Gonzalez's claim that he is a member of a "particular social group" entitled to protection under 8 U.S.C. § 1231(b)(3) must fail.

### B.

Next, Gonzalez argues that the BIA erred in concluding that he did not qualify for relief under the CAT.  In order to qualify for relief under the CAT, the applicant must show that it is more likely than not that he would be tortured by or with the acquiescence of a public official in his home country.  8 C.F.R. §§ 1208.16(c), 1208.18(a)(7) (implementing the CAT);  *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004).  Our jurisdiction to review this claim, however, is constrained by statute.  We lack jurisdiction to review "any final order of removal against an alien who is removable by reason of having committed" a controlled substance offense pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(II), except to the extent the alien raises "constitutional claims or questions of law," like those considered above (i.e. the interpretation of the phrase

12

"particular social group," which is a question of law).  8 U.S.C. § 1252(a)(2)(C), (D).

Gonzalez's request for relief under the CAT is a challenge to the BIA's factual determinations.  He argues that "the evidence presented compels the conclusion that Petitioner will be easily identified as a former gang member and will be targeted," and that the BIA erred in finding that he was not likely to be tortured with the acquiescence of the Honduran government.  In order for this court to agree with Gonzalez, we would need to review the BIA's findings of fact.  Because Gonzalez is removable for pleading guilty to possession of cocaine, a controlled substance offense, we do not have jurisdiction to review this challenge.  Accordingly, Gonzalez's petition for relief under the CAT is denied.

**PETITION DENIED.**