[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
————————————————

No. 18-12298
Non-Argument Calendar
————————————————

Agency No. A209-909-826

MONICA CASSIS VELANDO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
————————————————

(June 28, 2019)

Before TJOFLAT, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Monica Cassis Velando petitions for review of the Board of Immigration

Appeals's ("BIA") final order affirming the Immigration Judge's ("IJ") denial of her

application for asylum and withholding of removal.  The BIA concluded that Cassis Velando was not eligible for asylum or withholding because she was not a member of a "particular social group" within the meaning of that phrase in the Immigration and Nationality Act ("INA").  After careful review, we deny the petition.

## I.

Cassis Velando is a native and citizen of Bolivia who was admitted to the United States in November 2015 with permission to remain until May 2016.  She remained in the United States without authorization after that date, however, prompting the government to initiate removal proceedings in February 2017.

In response, Cassis Velando applied for asylum and withholding of removal.[1] She claimed that she had suffered past persecution and would suffer future persecution on account of her membership in a "particular social group."

The record demonstrates the following basis for her application.  Cassis Velando was a physical therapist and teacher in Bolivia who, due to deteriorating financial conditions, decided to borrow money to invest in a venture proposed by a friend from high school.  Excited by the friend's promises and bolstered by her early returns, she encouraged her friends and family to invest money into the venture. They did so.  But it turned out that her friend was running a fraud.  All the money

---

[1] Cassis Velando also applied for protection under the United Nations Convention Against Torture ("CAT").  She does not address the denial of CAT relief on appeal, though, so we omit further discussion of this matter.

2

was lost.  After speaking with the other victims, Cassis Velando decided to file a complaint with the police.  When she attempted to do so, however, a police officer demanded a bribe to investigate the case and threatened to accuse her of the fraud if she did not pay.

The other victims were initially supportive of Cassis Velando after the fraud was discovered.  But as time went by, they began to turn on her and hold her responsible for their losses.  She began receiving threatening phone calls and insults, which occurred nearly daily from March 2015 until she left for the United States in November 2015.  Some of the victims warned her that if she did not return their money they would harm her and her children.  One of the victims spoke on television about her involvement in the scheme, denouncing and blaming her.  That same victim showed up at her house and tried to hit her with a car.  Her daughter also suffered harassment.  These experiences caused her to leave Bolivia.

Cassis Velando's evidence showed that vigilante justice, including lynching, was prevalent in Bolivia.  Vigilantism developed due to rising crime rates and a perception that the police and the judiciary were ineffective, corrupt, or both.

After Cassis Velando came to the United States, a criminal prosecution against her was initiated in Bolivia.  News reports and wanted posters identified her as part of the fraud scheme and a fugitive.  In January 2017, an Interpol "Red Notice" was issued for her arrest as a "Fugitive Sought for a Criminal Trial."

Cassis Velando argued that these facts merited the grant of asylum and withholding of removal because her widespread denunciation as an accomplice of her friend's fraud scheme exposed her to persecution by both victims of the scheme and other members of society who believed in vigilante justice. She argued that members of her proposed social group—women accused of criminal activity and condemned in the media, thus making them subject to vigilante justice in a state with a judiciary prone to corruption—shared the immutable characteristic of stigmatization of criminal accusations. She also argued that her proposed social group was distinctly recognizable in society because she, like other members of the group, had been publicly branded a criminal.

After a merits hearing conducted by telephone, the IJ denied asylum and withholding of removal.[2] Despite finding that Cassis Velando qualified as a "refugee"—thus accepting as valid her proposed social group—the IJ concluded that her asylum application was untimely and that, as a result, she also was not eligible for withholding of removal. The IJ later granted Cassis Velando's motion for reconsideration in part, changing his reasons for denying withholding of removal but not the ultimate result.

---

[2] The Administrative Record contains no transcript of this hearing. Nevertheless, in his written decision, the IJ summarized Cassis Velando's hearing testimony, and she does not contend that the IJ mischaracterized her testimony or omitted relevant facts. Accordingly, we resolve her petition based on the current record.

Cassis Velando appealed to the BIA, which dismissed her appeal. The BIA found error by the IJ, but not an error that favored Cassis Velando. Specifically, the BIA agreed with the government that the IJ erred in his original decision by concluding that her proposed social group was a cognizable "particular social group" for purposes of establishing eligibility for asylum or withholding of removal.

The BIA cited three reasons for concluding that the proposed group was not a legally cognizable particular social group. First, it was "overbroad because it includes every woman in Bolivia accused of any type of crime reported on by the media who has suffered threats by her victims seeking revenge." Second, "the concepts of being 'condemned in the media' and having this occur in a 'state with a judiciary prone to corruption' are amorphous with subjective boundaries." And third, the proposed group was "circularly defined by persecutory conduct aimed at members of the group, which does not exist independently of the persecution."

Because Cassis Velando had not established persecution on account of a protected ground, the BIA affirmed the denial of her application for asylum and withholding of removal, even though it was "undisputed that [she] suffered harm which was sufficiently egregious to constitute past persecution." The BIA also found it unnecessary to address the IJ's determinations regarding the timeliness of her asylum application and the likelihood that she would suffer persecution in the future. Cassis Velando now petitions this Court for review of the BIA's decision.

5

## II.

The sole issue before us is whether the BIA correctly concluded that Cassis Velando's proposed social group does not qualify as a "particular social group" within the meaning of the INA. This is a legal question that we review *de novo*, with appropriate deference to the BIA's reasonable interpretation of the INA. *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403–04 (11th Cir. 2016).

The government has the discretion to grant asylum if the asylum applicant establishes that she is a "refugee." 8 U.S.C. § 1158(b)(1)(A). A "refugee" is someone who is unable or unwilling to return to her country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). With regard to withholding of removal, the government may not remove a person if her "life or freedom would be threatened in [her] country because of [her] race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1231(b)(3)(A).

Cassis Velando rests her application for asylum and withholding of removal on her "membership in a particular social group." In proceedings below, she defined the group as women accused of criminal activity and condemned in the media, thus making them subject to vigilante justice in a state with a judiciary prone to

6

corruption.[3]  Liberally construing her *pro se* brief on appeal, she argues that the group is clearly defined enough to qualify under the INA.

Because Congress did not speak to the issue of what constitutes a "particular social group" under the INA, we have deferred to the BIA's reasonable formulation of that term.  *Gonzalez*, 820 F.3d at 404.  In *Castillo-Arias*, we approved as reasonable the BIA's definition of the term as a group of persons who share a common characteristic that is either immutable or fundamental to its members' individual identities or consciences.  *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1196–97 (11th Cir. 2006) (citing *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985), *overruled on other grounds*, *Matter of Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987)).  Furthermore, the group must have sufficient "social visibility" but must not be "too numerous or inchoate."  *Castillo-Arias*, 446 F.3d at 1197–98; *see Gonzalez*, 820 F.3d at 404 (stating that the group must "be discrete and have definable boundaries—it must not be amorphous, overbroad, diffuse, or subjective") (quoting and deferring to *Matter of W-G-R-*, 26 I. & N. Dec. 208, 214 (BIA 2014)).  In other words, a "particular social group," in the BIA's formulation, has three

---

[3] Cassis Velando employs somewhat different phrasing in her *pro se* brief on appeal, describing the group as women who have been helping people and then accused of criminal activity.  She suggests that these women are more at risk of vigilante justice because their intentions may be misconstrued and turned against them.  This proposed definition was not raised before the BIA or IJ, however, so we lack jurisdiction to consider it.  *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) ("We lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted [her] administrative remedies with respect thereto.").

defining characteristics: (1) immutability; (2) social distinction; and (3) and particularity. *See Gonzalez*, 820 F.3d at 404.

More recently, we examined the term independently of the BIA and observed that "the phrase 'social group' implies a subset of the population bound together by some discrete and palpable characteristics." *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1310 (11th Cir. 2019). Further, we noted that the use of "particular" "denotes some characteristic setting the group off in a definite way from the vast majority of society." *Id.* Thus, a "particular social group" "should not be a 'catch all' for all persons alleging persecution who do not fit elsewhere." *Id.* Rather, based on the plain language of the statute, "a 'particular social group' must be more narrowly defined." *Id.* at 1310–11. To give meaning to the term, we, like the BIA, "turn to such obvious, discrete and measurable factors as immutability, identity, visibility, homogeneity, and cohesiveness." *Id.* at 1311. Importantly, "[t]he risk of persecution alone does not create a particular social group within the meaning of the INA." *Castillo-Arias*, 446 F.3d at 1198.

Here, the BIA did not err in determining that Cassis Velando's proposed social group was not cognizable. Members of Cassis Velando's proposed group may share an immutable characteristic, in the sense that they cannot change that they are women who in the past were accused of criminal activity and condemned in the media. But "sharing a common, immutable characteristic is a necessary, but not

8

sufficient, condition to qualify as a particular social group under BIA precedent." *Gonzalez*, 820 F.3d at 405.  And we agree with the BIA that the proposed group is overbroad because it potentially includes "every woman in Bolivia accused of any type of crime reported on by the media."  To the extent being "*condemned* in the media" implies some narrowing of that group, the concept is too amorphous and subjective to adequately narrow this diverse and disconnected group.

Nor does the addition of being "subject to vigilante justice in a state with a judiciary prone to corruption" help Cassis Velando's position in this case.  A particular social group cannot be defined by "[t]he risk of persecution alone." *Castillo-Arias*, 446 F.3d at 1198.  In other words, the group must have some existence independent of the persecutory conduct.  So if we exclude the risk of persecution—here, the risk of vigilante justice—from Cassis Velando's definition, we are left with a definition that potentially includes, as the BIA stated, any Bolivian woman negatively reported upon by the media after being accused of criminal activity.  For the reasons explained above, this definition is too overbroad and amorphous to qualify as a "particular social group." *See Gonzalez*, 820 F.3d at 404.

In sum, the BIA did not err in denying Cassis Velando's application for asylum and withholding of removal.  Cassis Velando has not shown that she was a member of a "particular social group" within the meaning of that phrase in the INA. For that reason, we, like the BIA, need not address her arguments that the

9

untimeliness of her asylum petition should be excused and that she proved more than a clear probability of future harm. Even if Cassis Velando was correct on these points, she still would not be eligible for asylum or withholding of removal.

**PETITION DENIED.**