[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10952

Non-Argument Calendar

_____

NELSON DORT,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent-Appellee.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A209-384-835

_____

Before JORDAN, NEWSOM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Petitioner Nelson Dort, a native and citizen of Haiti, seeks review of the decision by the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of his application for asylum and withholding of removal under sections 208(a) and 241(b)(3) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(a) and 1231(b)(3). Petitioner argued below that he was entitled to asylum and withholding of removal based on his well-founded fear of persecution in Haiti on account of his political opinion, nationality, and race. The IJ denied Petitioner's application, finding that he was statutorily ineligible for asylum pursuant to the "firm resettlement" bar and that his testimony in support of his persecution-based withholding of removal claim was not credible. The BIA affirmed. After careful review, we discern no reversible error in the BIA's decision and likewise affirm.

## BACKGROUND

Petitioner left Haiti in January 2013 and arrived in Brazil a month later, after traveling through Ecuador and Colombia. Petitioner stayed in Brazil for approximately three years and four months, during which time he was authorized to work and travel freely. In 2015, while he lived in Brazil, Petitioner fathered a son who is Brazilian and who currently lives in Brazil with his mother.

Petitioner left Brazil in 2016, following an economic down-turn there. From Brazil, Petitioner traveled to Ecuador and Co-lombia, through Central America, and ultimately to Tijuana, Mex-ico. Petitioner then entered the United States and presented him-self to US immigration officials at San Ysidro, California in June 2016. In his initial immigration interview, Petitioner stated that he had come to the United States for economic reasons, that he had not been harmed, threatened, or otherwise persecuted in Haiti and had no fear of returning to Haiti, and that he was not a member of a political group there. In addition, Petitioner advised immigration officials that he had residency in Brazil as well as in Haiti. Petitioner swore to the veracity of the statements he made during his initial interview, and he affirmed that he made the statements freely and voluntarily.

In August 2016, the Department of Homeland Security is-sued a notice for Petitioner to appear in removal proceedings. The notice charged Petitioner with being removable as an immigrant present in the United States without a valid entry document. After several delayed and rescheduled hearings, Petitioner filed an I-589 application in August 2017 seeking asylum and withholding of re-moval under §§ 208(a) and 241(b)(3) of the INA. In the August 2017 application, Petitioner claimed he was entitled to asylum and with-holding of removal based on his well-founded fear of persecution

in Haiti on account of his race, political opinion, and membership in a particular social group.[1]

In a declaration attached to his August 2017 application, Petitioner alleged that he became a member of the Haitian political party Pitit Dessalines in May 2012, and that he was attacked at his Dessalines, Haiti area pawn shop in December 2012 by Pierre Joseph, a member of the rival political party Haiti in Action or "AAA." Petitioner claimed in the declaration that Joseph left him lying unconscious on the pawn shop floor after the attack, and that he was found and rescued by community members who took him to the hospital. Petitioner did not provide any additional details about Joseph's alleged attack in his declaration. Nevertheless, Petitioner asserted in the declaration that he traveled from Haiti to Brazil in early 2013 to protect himself from Joseph. He explained that his first year in Brazil went well, but that he and other Haitians living in Brazil experienced discrimination beginning in 2016, following an economic downturn in that country. Consequently, Petitioner stated, he left Brazil in June 2016 and traveled to the United States.

Petitioner filed an amended I-589 application in November 2017, in which he again claimed he was entitled to asylum and withholding of removal based on a well-founded fear of persecution in Haiti on account of his race, nationality, and political

---

[1] Petitioner also initially sought relief under the Convention Against Torture, but he subsequently dropped that claim and we do not address it in this appeal.

opinion.  In the November 2017 application, Petitioner repeated his allegation that he had become a member of the Pitit Dessalines political party in May 2012, and that he subsequently had been attacked by Pierre Joseph from the rival AAA party.  However, in the later application, Petitioner alleged that Joseph's attack in the pawn shop occurred in July 2012 instead of December 2012, and he claimed that Joseph pulled a gun and fired shots at him during the attack.

In addition to the discrepancy as to the date and manner of the pawn shop attack, Petitioner described two subsequent attacks by Joseph in the November 2017 application that were omitted from his August 2017 declaration.  Specifically, Petitioner stated in the later application that when he returned to his Dessalines area pawn shop a few days after the initial attack in July 2012, Joseph and two of his AAA friends attacked Petitioner a second time, after which Petitioner was again rescued by community members who took him to the hospital.  Petitioner claimed that he reported the second attack to the police, and that he subsequently left the Dessalines area and went to Gonaives, Haiti to live with a friend.  According to the November 2017 application, Joseph and three other men found him in Gonaives in October 2012 and beat him up, after which Petitioner was found by community members and taken to a "bush doctor" who gave Petitioner a massage and a potion for blood clots and pain.

Petitioner stated in the November 2017 application that he left Gonaives a few days after Joseph's third attack and went to Port

au Prince to stay with a friend. However, Petitioner claimed that one day in January 2013, while he was taking a shower in his Port au Prince residence, he heard his name mentioned and looked out the window of the bathroom to see one of the men who had beaten him before. At that point, Petitioner said, he grabbed a few things and went through the back window to a neighbor's house. The next morning Petitioner caught a ride to the Dominican Republic. From the Dominican Republic, Petitioner traveled by plane to Ecuador, and he subsequently traveled by car to Brazil, arriving there in February 2013.

Petitioner acknowledged in the November 2017 application that he obtained residency status and work authorization in Brazil, and that he began a relationship with a woman in Brazil and had a son there in April 2015. But according to Petitioner, Brazil experienced an economic downturn in 2016 that led to discrimination against Haitians living in Brazil. Petitioner stated that, as a result of the discrimination, he left Brazil in June 2016 and traveled by foot, car, bus, and boat through Peru, Ecuador, Colombia, and ultimately to Tijuana, Mexico, where he crossed the United States border at San Ysidro and presented himself to US immigration officials.

The IJ held a hearing on Petitioner's application for asylum and withholding of removal in March 2019. At the beginning of the hearing, Petitioner proffered corroborating documents, including a police report he allegedly filed in Haiti in July 2012, a copy of a membership card showing his affiliation with Pitit Dessalines, a

letter from his father, and news articles about Pitit Dessalines, but the Government objected to the IJ's consideration of the documents because they were submitted on the day of the hearing, nearly two years after Petitioner filed his initial I-589 application, and they could not be properly reviewed or authenticated. The IJ excluded as untimely all the documents except two country reports.

Petitioner was the only witness who testified at the March 2019 hearing. He acknowledged during his testimony that he had one child, who was born in Brazil in April 2015 and who currently lived in Brazil, and that the rest of his family still lived in Haiti, except for one brother who lived in Brazil. For the duration of his testimony, Petitioner essentially restated the facts set out in his November 2017 I-589 application, adding a few significant details. Petitioner claimed in his testimony that he joined the political group Pitit Dessalines in 2012, that he had a position with the Pitit Dessalines that involved educating the community about the group's ideas for change in the community, and that he also had worked for Pitit Dessalines in an election overseer capacity in 2010.

Petitioner testified that he left Haiti in 2013 after suffering political persecution by the AAA party, specifically the allegedly politically motivated attacks mentioned above. Petitioner described in his testimony the two times Joseph allegedly attacked him at his Dessalines area pawn shop in July 2012, as well as the October 2012 attack in Gonaives. Petitioner testified that he moved to Port au Prince after the third attack, but that he left Haiti and traveled to

Brazil after Joseph showed up in Port au Prince asking about him. Petitioner explained that he arrived in Brazil in February 2013, where he lived and worked until 2016, when he and other Haitians living in Brazil began to experience discrimination after an economic downturn. At that time, Petitioner testified, he decided to travel to the United States.

On cross-examination, Petitioner offered no good explanation for the inconsistencies between his sworn statement to US immigration officials during his initial interview and his subsequent I-589 applications and testimony. For example, the Government attorney pointed out that Petitioner had stated in his June 2016 interview, contrary to his later-filed I-589 applications and testimony, that he left Haiti for economic reasons, that he had no fear of returning there, and that he had no political affiliation in Haiti. Asked to explain the conflict, Petitioner stated only that he was "under a lot of stress" during the June 2016 interview, in part because of the way he was detained with his hands behind his back. Petitioner also failed on cross-examination to explain other discrepancies between his various statements and his testimony—for example, the number of times he reported Joseph's attacks to the police—and he could not remember significant details about the incidents that were the subject of his testimony, such as the name of the hospital where he was treated.

After the Government's cross-examination, the IJ directly questioned Petitioner as to whether he had used any names other than his own while traveling to the United States. Petitioner

admitted that he had used the name Johnny Joseph or Johnny Dea-juste, instead of his real name Nelson Dort, to facilitate his movement through various countries.  Petitioner also admitted that he had said he was from Congo rather than Haiti during his journey. Petitioner explained that it is more difficult for Haitians to pass through certain places.

At the conclusion of the March 2019 hearing, the IJ determined that there was sufficient evidence to establish that Petitioner was firmly resettled in Brazil, including Petitioner's testimony that he had residency in Brazil, that he could travel in Brazil, that he worked in Brazil, and that he had a child who was born in Brazil and currently lived in Brazil with his mother.  Noting that Petitioner had failed to rebut the resettlement evidence or to establish an exception to the firm resettlement bar, the IJ concluded that he was statutorily barred from asylum and thus denied his asylum application.

The IJ also found that Petitioner's testimony regarding his alleged politically motivated[2] persecution in Haiti was not credible because of numerous inconsistencies between his prior statements and his testimony at the hearing.  In particular, the IJ emphasized Petitioner's June 2016 statement to US immigration officials that he had no fear of returning to Haiti, that he came to the United

---

[2] Petitioner did not present any testimony or evidence below to support the claim in his I-589 application that he was persecuted on account of his race or nationality, and he does not pursue that claim on appeal.

States for economic reasons, and that he had no political affiliation in Haiti or any other country. That statement directly contravened Petitioner's later-filed I-589 applications and his testimony at the merits hearing. The IJ also noted other discrepancies related to the date, number, and manner of Joseph's alleged attacks and the number of times Petitioner reported the attacks to the police. Finally, the IJ found it significant that Petitioner had lied about his name and country of origin as he traveled through other countries on his way to the United States. Based on all this evidence, the IJ concluded that Petitioner's political persecution claim lacked veracity and that he had not shown he was eligible for withholding of removal.

The BIA affirmed both the IJ's determination as to the firm resettlement bar and its credibility findings. Regarding firm resettlement, the BIA noted that DHS had presented substantial evidence that Petitioner received an offer of firm resettlement in Brazil—specifically, Petitioner's testimony that he was authorized to work and live in Brazil, that he could travel within the country, that he had lived there for approximately three years and four months before traveling to the United States, and that he had a child who was born in Brazil and who lived there with his mother—which Petitioner failed to rebut. Based on this evidence, the BIA affirmed the IJ's conclusion that Petitioner was not statutorily eligible for asylum because of his firm resettlement in Brazil.

As to credibility, the BIA concluded that Petitioner was not entitled to either asylum or withholding of removal as a result of

the IJ's adverse credibility determination. In support of its conclusion the BIA cited: (1) the inconsistency between Petitioner's statements during his initial interview with US immigration officials, his two subsequent I-589 applications, and his testimony at the merits hearing, (2) discrepancies between Petitioner's two I-589 applications and his testimony regarding the date, number, and manner of Joseph's alleged attacks, and the number of times Petitioner reported the attacks to the police, and (3) Petitioner's use of false names and a false country of origin to facilitate his travel to the United States. The BIA explained that the IJ's adverse credibility determination warranted denial of Petitioner's application for withholding of removal and that it also constituted an alternative ground upon which to deny his application for asylum.

Petitioner, proceeding *pro se*, appeals the BIA's decision. In support of his appeal, Petitioner claims that he did not intend to resettle in Brazil, that he stayed there for only five months, and that he did not establish significant ties there. Petitioner argues further that evidence in the record indicates that he was subjected to threats in Haiti based on his political opinion, and that the evidence further demonstrates his past and likely future persecution in Haiti based on his political affiliation. As discussed below, we are unpersuaded by Petitioner's arguments and thus affirm the BIA's decision denying his application for asylum and withholding of removal.

## DISCUSSION

### I.    Standard of Review

"When the BIA issues a decision" in a case arising under the INA, "we review only that decision, except to the extent the BIA expressly adopts the IJ's decision." *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1344 (11th Cir. 2007). "Where the BIA agrees with the IJ's reasoning, we review the decisions of both the BIA and the IJ to the extent of the agreement." *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016).

On petition for review of a BIA decision, we review legal conclusions *de novo* and factual determinations under the substantial evidence test. *See id.* To apply the substantial evidence test, we "view the record evidence in the light most favorable to the [BIA]'s decision and draw all reasonable inferences in favor of that decision." *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1286 (11th Cir. 2020) (quotation marks omitted). Construing the record in that manner, we must "affirm the BIA's factual findings so long as they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (quotation marks omitted). To reverse a finding of fact made by the BIA, we "must find that the record not only supports reversal, but compels it." *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019) (quotation marks omitted).

## II.    Asylum and Withholding of Removal

Petitioner's I-589 application seeks asylum and withholding of removal pursuant to sections 208(a) and 241(b)(3)(A) of the INA. To obtain asylum, Petitioner must show that he qualifies as a "refugee" within the meaning of the INA. INA § 208(b)(1), 8 U.S.C. § 1158(b)(1).  As relevant here, the INA defines a refugee as an individual who is outside his home country and who cannot return to that country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."    INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).

Petitioner, as the asylum applicant, bears the burden of proving that he satisfies the INA's definition of a refugee.  *See* 8 U.S.C. § 1158(b)(1)(B)(i).  He can carry that burden by presenting "specific and credible evidence" that he suffered past persecution on account of a statutorily listed factor or that he has a "well-founded fear that the statutorily listed factor will cause future persecution."  *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006) (quotation marks omitted).  Where an asylum applicant establishes past persecution, a rebuttable presumption arises that he has a well-founded fear of future persecution.  *See id.*  If the applicant cannot show past persecution, he must demonstrate a "well-founded fear of future persecution that is both subjectively genuine and objectively reasonable.  *Id.*  *See also Mehmeti v. U.S. Att'y Gen.*, 572 F.3d 1196, 1200 (11th Cir. 2009) (explaining that an asylum applicant can prove he has a well-founded fear of future

persecution by establishing a reasonable possibility he will suffer persecution based on a protected ground upon return to his home country).

An applicant who "firmly resettled in another country prior to arriving in the United States" is statutorily ineligible for asylum. INA § 208(b)(2)(A)(vi), 8 U.S.C. § 1158(b)(2)(A)(vi).  Under the governing regulations in effect when the IJ denied Petitioner's asylum application, the firm resettlement bar applies when "prior to arrival in the United States, [the applicant] entered into another country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement."  8 C.F.R. § 1208.15 (effective until Jan. 11, 2021).  The regulation provides two exceptions to the firm resettlement bar.  First, an applicant is not considered firmly resettled if he entered the third country as "a necessary consequence of his . . . flight from persecution" and if he "remained in that country only as long as was necessary to arrange onward travel, and . . . did not establish significant ties" there.  Id. § 1208.15(a).  Second, an applicant is not considered firmly resettled if the conditions of his residence in the third country were "so substantially and consciously restricted by the authority of the country of refuge that he . . . was not in fact resettled."  Id. § 1208.15(b).

Similar to qualifying for asylum, Petitioner can show he is entitled to  withholding of removal by proving that, if returned to his country, his life or freedom would be threatened on account of his "race, religion, nationality, membership in a particular social

group, or political opinion." INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). To carry his burden of proof as to withholding of removal, Petitioner must demonstrate that he would "more likely than not" be persecuted if returned to his country. *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 819 (11th Cir. 2004) (quotation marks omitted). If Petitioner is unable to establish that he qualifies for asylum, he cannot meet the "more stringent" standard for withholding of removal. *Id.*

### A.    Credibility

We consider the credibility issue first, because it is dispositive of Petitioner's application for asylum as well as his application for withholding of removal. *See id.* ("[B]ecause [the applicant] cannot meet the 'well-founded fear' standard for asylum, it is *a fortiori* that he cannot meet the withholding of removal standard."). As noted, the IJ excluded the documents Petitioner proffered on the day of the merits hearing as untimely. Petitioner did not appeal that decision to the BIA or to this Court, and he did not offer any other corroborating evidence to support his persecution claim, which is the basis of his application for asylum and withholding of removal. "An adverse credibility determination coupled with a lack of corroborating evidence for a claim of persecution means that the applicant's claim fails." *Lyashchynska v. U.S. Att'y Gen.*, 676 F.3d 962, 967 (11th Cir. 2012).

Credibility determinations, like other factual findings, "are reviewed under the substantial evidence test." *Xiu Ying Wu v. U.S. Att'y Gen.*, 712 F.3d 486, 493 (11th Cir. 2013) ("The trier of fact

must determine credibility, and this court may not substitute its judgment for that of the BIA with respect to credibility findings." (quotation marks omitted)).  Although a credibility determination may not be based on "speculation and conjecture," the BIA has broad discretion to assess an applicant's credibility and need only provide "specific, cogent reasons" to support an adverse credibility determination.  *Id.* (quotation marks omitted).  When the BIA has made an adverse credibility determination, the applicant has the burden to show that the determination "was not supported by specific, cogent reasons or was not based on substantial evidence."  *Id.* (quotation marks omitted).

The BIA provided specific and cogent reasons in support of its decision to affirm the IJ's adverse credibility determination here, namely:  (1) Petitioner's sworn statement to US immigration officials in June 2016 that he had come to the United States for economic reasons, that he had not been harmed, threatened, or otherwise persecuted in Haiti, that he had no fear of returning to Haiti, and that he was not a member of a political group in Haiti, all of which was directly contrary to Petitioner's later filed I-589 applications and his testimony at the merits hearing, (2) additional discrepancies between Petitioner's I-589 applications and his testimony regarding the details surrounding the attacks he allegedly suffered, including the number of attacks, the date they occurred, and the number of times Petitioner reported the attacks to the police, and (3) Petitioner's use of false names and a false country of origin to facilitate his travel to the United States.  Pursuant to the REAL ID

Act, which governs Petitioner's application, the BIA's stated reasons for affirming the IJ's adverse credibility determination ae all relevant and valid considerations. *See* 8 U.S.C. § 1158(b)(1)(B)(iii) ("Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.").

Furthermore, the reasons set out by the BIA for affirming the IJ's adverse credibility determination are supported by substantial evidence in the record. It is undisputed that Petitioner's initial statement to US immigration officials directly contravenes his later-filed I-589 applications and testimony. The only explanation Petitioner offered for his conflicting statements and testimony is that he was "stressed" during the June 2016 interview. It was within the BIA's discretion to reject that explanation, especially given that Petitioner swore to the veracity of his June 2016 statement and to the fact that it was made freely and voluntarily. *See Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1233 (11th Cir. 2006)

(explaining that an applicant's explanation for an inconsistency—even if it is tenable—does not warrant reversal if the explanation does not "compel a reasonable fact finder to reverse the IJ's credibility determination"). Petitioner did not offer any explanation for the other discrepancies noted by the BIA, and he admitted that he used false information to facilitate his travel to the United States.

In short, there is no basis for overturning the BIA's decision to affirm the IJ's adverse credibility determination. The BIA provided specific, cogent reasons for its decision, all of which are supported by substantial evidence in the record. Given that Petitioner failed to testify credibly as to his persecution claim, and the lack of any other corroborating evidence to support his claim, we affirm the BIA's denial of his application for asylum and his application for withholding of removal.

## B.    Firm Resettlement

We note that the BIA also correctly determined that Petitioner is statutorily ineligible for asylum pursuant to the firm resettlement bar. The BIA determined that the bar applied to Petitioner based on evidence in the record showing that Petitioner had been offered firm resettlement in Brazil before he entered the United States in June 2016. There is substantial—and unrebutted—evidence in the record to support that determination. Petitioner advised US immigration officials during his initial interview that he had residency in Brazil as well as Haiti, and he later acknowledged in his I-589 application that he had been given residency status in Brazil. Petitioner subsequently testified at the merits hearing that

21-10952                 Opinion of the Court                 19

he was authorized to work and live in Brazil, that he could travel within the country, that he had lived in Brazil for approximately three years and four months before traveling to the United States, and that he had a child who was born in Brazil and who currently lived there with his mother. That evidence was more than adequate to show, under the governing regulations in effect at the time of Petitioner's merits hearing, that Petitioner had firmly resettled in Brazil before he traveled to the United States. *See* 8 C.F.R. § 1208.15 (effective until Jan. 11, 2021) ("An alien is considered to be firmly resettled if, prior to arrival in the United States, he or she entered into another country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement.").[3]

Petitioner did not rebut the evidence relied upon by the BIA to establish firm resettlement, nor did he offer any evidence to show that an exception to the firm resettlement bar applied in his case. Again, under the operative regulations an exception to the bar applies when: (1) the applicant's entry into a third country was "a necessary consequence of his . . . flight from persecution" and

_____

[3] The firm resettlement bar would also apply to Petitioner under the current regulations, which provide, in relevant part and with exceptions that do not apply here, that an alien is considered to be firmly resettled if he "resided voluntarily, and without continuing to suffer persecution in any one country for one year or more after departing his country of nationality or last habitual residence and prior to arrival in or entry into the United States." *See* 8 C.F.R. § 1208.15(a)(2) (effective Jan. 11, 2021).

he "did not establish significant ties" there, or (2) the conditions of the applicant's residence in the third country were "substantially and consciously restricted by the authority of the country." *See* 28 C.F.R. §§ 1208.15(a) and (b) (effective until Jan. 11, 2021). Petitioner admitted in his filings and his testimony below that he lived in Brazil for more than three years, during which time he established significant ties, including fathering a son who as of the time of Petitioner's merits hearing still lived in Brazil with his mother. Petitioner claims in the appellate brief he filed in this Court that he was only in Brazil for five months, but that claim contradicts all the evidence presented below. Petitioner also argues in support of his appeal that he was subject to discrimination in Brazil, but he does not show—and he made no effort to show below—that the discrimination was imposed by the Brazilian government or that the conditions of his residence in Brazil were otherwise "substantially and consciously restricted" by the Brazilian government. *See Id.* § 1208.15(b). Accordingly, the BIA correctly denied Petitioner's application for asylum on the alternative ground that the application was precluded by the firm resettlement bar.

## CONCLUSION

For the foregoing reasons, we affirm the BIA's denial of Petitioner's application for asylum and withholding of removal.

**PETITION DENIED**