[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11147

Non-Argument Calendar

_____

HECTOR ZAMUNDIO-ALUAREZ,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A200-276-565

_____

Before JILL PRYOR, BRANCH, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Petitioner Hector Zamudio-Alvarez[1], a native and citizen of Mexico, seeks review of the final order by the Board of Immigration Appeals (the "BIA") denying his application for cancellation of removal under INA § 240A(b), 8 U.S.C. § 1229b(b).  As discussed below, this Court lacks jurisdiction to review the BIA's order denying Petitioner's application.  Accordingly, we dismiss Petitioner's appeal.

## BACKGROUND

Petitioner, a native and citizen of Mexico, claims he entered the United States in January 2001 in Arizona.  It is undisputed that Petitioner entered without inspection.  In June 2011, the Department of Homeland Security ("DHS") served Petitioner with a notice to appear in removal proceedings.  The notice charged Petitioner with being removable as an alien present in the United States without being admitted or paroled.

Appearing before the IJ, Petitioner admitted the allegations in the notice to appear and conceded removability.  However, Petitioner filed an application for cancellation of removal pursuant to

---

[1] Our docket refers to Petitioner as "Hector Zamundio-Aluarez" but we refer to him in this opinion by the name that appears on his birth certificate, "Hector Zamudio-Alvarez."

8 U.S.C. § 1229b(b), which authorizes cancellation when the removal of a deportable individual who has been continuously present in the United States for ten years would cause "exceptional and extremely unusual hardship" to a qualifying relative in the United States, assuming certain other requirements are met. Petitioner stated in his application that he satisfied the continuous presence requirement because he had lived in the United States since 2001 and that his removal would cause extreme hardship for his children Aron Zamudio Frausto and Jared Zamudio Cortes, who are United States citizens and who at the time of Petitioner's application were eight and four years old, respectively. In support of his application, Petitioner produced birth certificates for Aron and Jared, medical records indicating that Jared has a congenital condition in his left ear called cholesteatoma that had required surgery and treatment, tax documents, and letters of support, among other items.

The IJ held a hearing on Petitioner's application in September 2017. Petitioner, the sole witness at the hearing, testified that he entered the United States in January 2001 in Arizona. To establish Petitioner's ten-year continuous presence in the United States, Petitioner's attorney questioned him extensively about whether he had left the United States since his original entry in 2001. In his initial application for cancellation of removal, Petitioner indicated that he had "never" left the United States since he first arrived in 2001. But in a revised application, Petitioner stated that he traveled to Mexico in May 2004 after his grandmother died, returning to the United States in June 2004, and that he traveled to Mexico again in

December 2004, returning to the United States in January 2005, both times reentering without inspection.

As the IJ noted during the hearing, Petitioner's testimony regarding his travel to Mexico after 2001 was inconsistent and unclear. Petitioner testified that he left the United States to visit his mother in Mexico at least two times after he arrived in the United States in 2001, but he could not recall the length of his visits and he variously placed the dates of the visits in 2003, 2004, or 2005. At some point during his testimony, the IJ referred Petitioner to the statement in his written application that he had left the United States and traveled to Mexico in May 2004 for his grandmother's funeral and that he had again left the United States and traveled to Mexico in December 2004 to visit his mother. Petitioner ultimately revised his testimony to suggest that he either traveled to Mexico in May 2004 for his grandmother's funeral and returned in January 2005, or that he visited Mexico for the funeral in May 2004 and returned to the United States within a few weeks, and that he visited Mexico a second time at the end of 2004 and returned to the United States in January 2005. The IJ confirmed during the hearing that, despite Petitioner's claim to have arrived in the United States in 2001, there were no documents establishing his presence here before May 2005.

As to the hardship prong of the INA § 1229b(b) analysis, Petitioner testified, consistent with the supporting documents he filed, that he has two children—Aron (eight years old at the time of the hearing) and Jared (four years old at the time of the hearing)—

who were born in the United States. Petitioner stated that both children lived with their mothers in the Atlanta area, and that Petitioner did not live with the children or either mother, but that he saw both children regularly and paid child support in the amount of $300 for each child per month. Petitioner confirmed that his children would not go with him to Mexico if he was removed but would remain in the United States with their mothers. Petitioner testified that his older child, Aron, took medication for hyperactivity but was otherwise healthy. He stated that his younger child, Jared, had an ear condition (cholesteatoma) that had required two surgeries, and that might require a third surgery and additional monitoring and treatment.

On cross-examination, Petitioner admitted that he had been convicted of disorderly conduct in 2011. Petitioner explained that the victim of his offense was the mother of his older child, Aron, and that the offense had occurred when Petitioner had grabbed the victim by the arms and left a mark while the two were having an altercation about money.

Following the hearing, Petitioner moved to supplement the record with a letter from his child Jared's doctor explaining what cholesteatoma is and how it is treated. The IJ granted the motion and considered the supplemental evidence from Jared's doctor. Per the doctor's letter, cholesteatoma is an abnormal growth of skin cells in the middle ear that can damage the bones and other structures of the ear and that can cause hearing loss and infections if it is not treated.

The IJ subsequently issued a written decision concluding that Petitioner was not eligible for cancellation of removal, denying his application, and ordering that he be removed to Mexico. In support of the decision, the IJ found that Petitioner was not credible because his testimony at the hearing was inconsistent as to how many times and when he entered and left the United States and he failed to provide corroborating evidence. In the alternative, the IJ determined that Petitioner did not demonstrate ten years of continuous physical presence in the United States or an exceptional and extremely unusual hardship to a qualifying relative, both of which are required to obtain cancellation of removal under § 1229b(b).

Specifically as to physical presence, the IJ noted that Petitioner had admitted taking two trips to Mexico in 2004 and 2005, and that he had presented no evidence showing the length of those trips, which was necessary to establish his continuous physical presence in the United States for ten years prior to May 22, 2014, the date Petitioner filed his application for cancellation. Regarding hardship, the IJ concluded that Petitioner had failed to show his children would suffer "exceptional and extremely unusual hardship" if he were removed to Mexico. The IJ emphasized that Aron and Jared would continue to live with their mothers in the United States after Petitioner's removal, that Aron was healthy and doing well other than medically regulated hyperactivity, that Jared's doctor had not identified any current problems arising from his cholesteatoma other than the affected hearing on his left side, and that

Jared would be able to retain access to Medicaid and any further needed treatments despite Petitioner's removal. The IJ acknowledged that Aron and Jared would miss Petitioner but observed that family separation does not generally establish exceptional and extremely unusual hardship because separation is frequent in removal proceedings. Further, the IJ noted that Petitioner had not shown he would be unable to find employment or that he could not continue to help financially support his children from Mexico.

Petitioner appealed the IJ's decision to the BIA, which affirmed the denial of his application. In accordance with the IJ's decision, the BIA concluded that Petitioner could not show that his return to Mexico would result in exceptional and extremely unusual hardship to his children, Aron and Jared. To qualify for relief under INA § 1229b(b), the BIA explained, Petitioner had to show that his removal would result in hardship that is "substantially beyond" the hardship ordinarily associated with an individual's ordered departure from the United States. Based on Petitioner's testimony, the BIA concluded that Petitioner had not satisfied that standard, observing more specifically that Petitioner had "not demonstrated how his children's minor health issues would be affected by his removal." Because it affirmed the IJ on the hardship prong of the analysis, the BIA did not consider the IJ's alternative finding that Petitioner's testimony was not credible and that he did not meet his burden to prove the requisite ten years of continuous physical presence in the United States.

Petitioner appeals the BIA's denial of his application for cancellation of removal. In his appellate briefing, Petitioner identifies one issue for appeal: whether his application should have been denied "for lack of exceptional and extremely unusual hardship?" In support of his argument that the application should not have been denied on that ground, Petitioner insists that, contrary to the IJ and the BIA's decision, he has satisfied the exceptional and extremely unusual hardship standard by producing medical evidence concerning his child Aron's hyperactivity and his child Jared's ear condition.

## DISCUSSION

### I.    Standard of Review

"When the BIA issues a decision" in a case arising under the INA, "we review only that decision, except to the extent the BIA expressly adopts the IJ's decision." *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1344 (11th Cir. 2007). When the BIA expressly adopts or agrees with the IJ's decision, we review the IJ's decision as well as the BIA's decision "to the extent of the agreement." *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016).

We review our own subject matter jurisdiction *de novo*. *Blanc v. U.S. Att'y Gen.*, 996 F.3d 1274, 1277 (11th Cir. 2021). Congress has expressly eliminated our jurisdiction to review a "judgment regarding the granting of relief under section . . . 1229b"—the provision Petitioner invokes in this case to obtain cancellation of removal—except to the extent that such review involves

"constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(B)(i), (D). *See also Patel v. Garland*, 142 S. Ct. 1614, 1627 (2022) (holding that "[f]ederal courts lack jurisdiction to review facts found as part of discretionary-relief proceedings under" the provisions enumerated in 8 U.S.C. § 1252(a)(2)(B)(i), including § 1229b(b)). Although the Court retains jurisdiction to consider constitutional claims and questions of law that arise in the context of a discretionary cancellation of removal decision, such claims must be "colorable" for the Court to exercise its jurisdiction. *See Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1272 (11th Cir. 2020) (*en banc*), aff'd, *Patel v. Garland*, 142 S. Ct. 1614 (2022). A petitioner "may not dress up a claim with legal or constitutional clothing to invoke our jurisdiction." *Id.*

## II.     Analysis

Petitioner's appeal in this case runs headlong into the jurisdictional bar applicable to the BIA's decision to deny discretionary relief under § 1229b. *See* 8 U.S.C. § 1252(a)(2)(B)(i). As discussed, pursuant to § 1229b, the agency is authorized to cancel the removal and adjust the status of a deportable individual who can establish, among other things, that his "removal would result in exceptional and extremely unusual hardship" to a qualifying relative who is a United States citizen or lawful permanent resident. *See* 8 U.S.C. § 1229b(b)(1). The BIA affirmed the IJ's denial of Petitioner's application for relief under that provision on the ground that Petitioner failed to establish that his children, the United States citizens whom Petitioner claimed as qualifying relatives, would suffer exceptional

and extremely unusual hardship if he were removed to Mexico. The only argument Petitioner asserts on appeal is that the BIA erred in weighing the evidence as to that issue and that his children will, in fact, suffer such hardship upon his removal. That is not an argument we have jurisdiction to consider. *See Patel*, 142 S. Ct. at 1627.

Indeed, Petitioner entirely ignores the jurisdictional bar in his appellate briefing. On its face, Petitioner's argument on appeal concerns solely the IJ's and the BIA's weighing of the evidence concerning the hardship his children allegedly would suffer upon his removal, and whether such hardship qualifies as exceptional and extremely unusual. Petitioner frames his claim neither as constitutional nor legal. Rather, he directly challenges the agency's factual determination after weighing the evidence that Petitioner's children would not suffer exceptional and extremely unusual hardship as a result of his removal. As such, Petitioner's appeal is an unreviewable challenge to the denial of cancellation of removal, and it must be dismissed. *See id.*

## CONCLUSION

For the foregoing reasons, we **DISMISS** Petitioner's appeal for lack of jurisdiction.

**PETITION DISMISSED**