[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-10171

Non-Argument Calendar

_____

ANUP KUMAR,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A216-265-926

_____

Before JORDAN, NEWSOM, and TJOFLAT, Circuit Judges.

PER CURIAM:

Anup Kumar seeks review of the Board of Immigration Appeals' (the "BIA") decision affirming the Immigration Judge's (the "IJ") denial of his application for asylum, withholding of removal under the Immigration and Nationality Act (the "INA"), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (the "CAT"). Kumar argues that the BIA and IJ erred in making an adverse credibility determination because they disregarded the times when his testimony was consistent, and he offered corroborative evidence that satisfactorily explained any inadvertent inconsistencies. He also argues that any inconsistencies and omissions in his testimony were trivial and non-material. Finally, Kumar challenges the IJ's alternative findings that he was ineligible for relief even if his testimony had been credible. Because the BIA and IJ based their adverse credibility findings on specific, cogent reasons that were supported by substantial evidence, Kumar's petition for review is denied.

I.

We begin with a brief recounting of the pertinent facts, as described in Kumar's application for asylum and supporting affidavit, and an overview of the evidence Kumar submitted to the IJ. The credibility of Kumar's evidence is discussed in part III, *infra*.

Kumar, a native and citizen of India, entered the United States on or about November 26, 2017. On January 3, 2018, the Department of Homeland Security served Kumar with a Notice to Appear ("NTA"), charging him as being removable as: (1) a noncitizen seeking admission without a valid entry or travel document under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I); and (2) as "an alien present in the United States without being admitted or paroled" under INA § 212 (a)(6)(A)(i), 8 U.S.C. (a)(6)(A)(i). On June 4, 2018, Kumar filed a Motion to Change Venue in which he admitted the factual allegations in the NTA and conceded that he was removable under the above statutes.

Kumar submitted an I-589 application that sought both asylum and withholding of removal under the INA, as well as CAT relief. Kumar's application claimed he was "physically harmed and mistreated" in India, and that "the workers of Gurmeet Ram Rahim[1] and [the] BJP party[2] attacked [him] thrice." He claimed that he would be harmed if he returned to India because he was

---

[1] Gurmeet Ram Rahim Singh is the head of Dera Sacha Sauda, a social group in India. In 2017, he was found guilty of raping two women. Following the guilty verdict, a demonstration of Ram Rahim's followers in Panchkula devolved into violence and chaos. Kumar's affidavit uses the names Ram Rahim, Baba Ram Rahim, Sant Gurmeet Ram Raheem, and Gurmeet Ram Rahim Singh, among others, to describe the same person. This opinion refers to him as Ram Rahim.

[2] The BJP is the Bharatiya Janata Party, the ruling party in India.

threatened and attacked by supporters of the BJP and workers of [ ] Ram Rahim because he did not support them.

In the affidavit Kumar submitted to supplement his asylum application, he claimed he was persecuted by the followers of Ram Rahim. His affidavit stated that he became involved with Dera Sacha Sauda ("DSS"), which was a "socio-spiritual organization" headed by Ram Rahim. Kumar's involvement with DSS involved putting up posters and serving food and water to people during religious gatherings.

Kumar later learned that Ram Rahim was involved in illegal activities, including murder and rape, and that he forced people to convert to his religion. Kumar also claimed that Ram Rahim was supported by the ruling government, the BJP, because Ram Rahim provided the BJP with many votes. When he learned of Ram Rahim's illegal activities, Kumar stopped following him and as a result was threatened and attacked by Ram Rahim's followers, who tried to force Kumar to join their religion.

Kumar stated that he was attacked by Ram Rahim's followers on August 25, 2017. They told Kumar to come with them to Panchkula for a rally in support of Ram Rahim. When Kumar refused to go with them, he claimed they beat him mercilessly. Next, Kumar claimed that, on August 28, 2017, Rahm Rahim's followers beat him with sticks and showed him their weapons; they then forcibly took Kumar to Panchkula to show support for Ram Rahim. When he returned, Kumar's father took him to the village doctor, who gave him pain killers. Kumar and his father also went to the

police station on August 29, 2017, but the police did not take their report.

According to Kumar's affidavit, Ram Rahim's followers threatened him again on September 7, 2017, telling him that if he did not follow their religion, they would kill him.  Kumar claimed that on September 11, he went to the BJP to complain about Ram Rahim's followers.  The government did not help him, and, according to Kumar's statement, they threatened to put him behind bars under false charges if he ever tried to file another complaint against Ram Rahim.

Fearing for his life, Kumar claimed that he left India on September 26, 2017.  According to Kumar, if he returns to India, Ram Rahim's followers "will again harass me, torture me, and might kill me." He claims that Ram Rahim's followers "showed [his] pictures everywhere."

Along with his affidavit, Kumar submitted:  a signed affidavit from his father, a signed affidavit from his mother, and affidavits from his uncle and other community members and friends.  Kumar also submitted articles about Ram Rahim's political influence and his illegal activities.

As discussed *infra*, the IJ made an adverse credibility finding regarding Kumar's testimony because of inconsistencies between his affidavit and his testimony; internal inconsistencies in his testimony; and his demeanor, candor, and responsiveness.  Because there was not sufficient evidence in the record to support Kumar's

claim in the absence of his testimony, the IJ denied his application for relief based on the adverse credibility finding alone.  In case the BIA disagreed with the adverse credibility finding, the IJ went on to offer alternative grounds for denying the relief Kumar sought. The IJ noted that Kumar had not established a nexus in any of the five protected factors laid out in the INA and that Kumar had not been the victim of past persecution.[3]

The BIA affirmed and adopted the decision of the IJ, noting that the IJ "identified inconsistencies within [Kumar's] testimony, between [Kumar's] testimony and his affidavit, and between his testimony and his parents' affidavits."  The BIA held that the IJ's assessment of the adverse credibility factors was a reasonable interpretation of the record and that the adverse credibility determination undermined all of Kumar's claims for relief.  According to the BIA, "[t]he other affidavits and independent evidence of record are insufficient" to meet the "burdens of proof in light of the lack of credible testimony."  Because the adverse credibility finding undermined all of Kumar's evidence, the BIA did not reach the IJ's alternative holdings.

II.

We "review the BIA's decision as the final judgment, unless the BIA expressly adopted the IJ's decision." *Gonzalez v. U.S. Att'y*

---

[3] The statutorily listed factors are race, religion, nationality, membership in a particular social group, or political opinion.  INA § 101(a)(42)(A); 8 U.S.C. § 1101(a)(42)(A).

*Gen.*, 820 F.3d 399, 403 (11th Cir. 2016). Where the BIA adopts the IJ's decision or expressly agrees with the IJ's reasoning, we will review both decisions to the extent of the adoption or agreement. *Id.* Issues not reached by the BIA are not properly before us. *Id.*

We review factual findings, including credibility determinations, using the substantial evidence test. *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1230–31 (11th Cir. 2006) (per curiam). Under the substantial evidence test, we must affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc) (internal quotation marks omitted). We view the evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision. *Id.* at 1027. We will reverse an agency factual finding "only if the evidence compels a reasonable fact finder to find otherwise." *Chen*, 463 F.3d at 1230–31 (internal quotation marks omitted). The mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the agency's findings. *Adefemi*, 386 F.3d at 1027.

An applicant for asylum must meet the INA's definition of a refugee. INA § 208(b)(1)(A); 8 U.S.C. § 1158(b)(1)(A). The INA defines a refugee as:

> [A]ny person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country

because of persecution or a well-founded fear of per-
secution on account of race, religion, nationality,
membership in a particular social group, or political
opinion.

INA § 101(a)(42)(A); 8 U.S.C. § 1101(a)(42)(A).  To meet the defini-
tion of a refugee, the applicant must, "with specific and credible
evidence, demonstrate (1) past persecution on account of a statu-
torily listed factor, or (2) a well-founded fear that the statutorily
listed factor will cause future persecution." *Ruiz v. U.S. Att'y Gen.*,
440 F.3d 1247, 1257 (11th Cir. 2006) (internal quotation marks omit-
ted).  If the petitioner cannot show past persecution, he must
demonstrate "a well-founded fear of future persecution that is both
subjectively genuine and objectively reasonable." *Id.*

Like the showing required for asylum, an applicant seeking
the withholding of removal under the INA must demonstrate that
his "life or freedom would be threatened in that country because
of the alien's race, religion, nationality, membership in a particular
social group, or political opinion."  INA § 241(b)(3)(A), 8 U.S.C. §
1231(b)(3)(A).  Withholding of removal claims are governed by a
"more stringent" standard than asylum claims, however, requiring
the applicant to demonstrate that it is "more likely than not" that
he will be persecuted upon return to his home country. *Sepulveda
v. U.S. Att'y Gen.*, 401 F.3d 1226, 1233 (11th Cir. 2005).

An applicant seeking CAT relief must establish "that it is
more likely than not that he or she would be tortured if removed

to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). The CAT defines torture as:

> [A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1).

An adverse credibility determination must be based on "specific, cogent reasons." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005). Once an adverse credibility determination is made, the applicant has the burden to show either that the determination was not based on specific, cogent, reasons or that it is not supported by substantial evidence. *Id.* An applicant's tenable explanation for an inconsistency or implausibility will not necessarily warrant reversal, particularly where corroborating evidence is lacking. *See Chen*, 463 F.3d at 1233.

An IJ may base a credibility finding on the totality of the circumstances, including: (1) the demeanor, candor, or responsiveness of the applicant; (2) the inherent plausibility of the applicant's

account; (3) the consistency between the applicant's written and oral statements; (4) the internal consistency of each statement; and (5) the consistency of the statements with other record evidence, including State Department reports.   INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii).   An adverse credibility determination may be based on inaccuracies, inconsistences, and falsehoods, whether or not they relate to the "heart" of the applicant's claim. *Id.*

### III.

Here, the BIA dismissed Kumar's appeal of the IJ's decision and adopted the IJ's credibility finding.  The BIA expressly declined to reach the IJ's alternative holdings, however.  That means we review both the BIA's and IJ's decisions regarding the adverse credibility ruling, but because the BIA did not reach the IJ's alternative holdings, they are not before this Court. *See Gonzalez*, 820 F.3d at 403.  Kumar's burden, then, is to show either that the adverse credibility findings were (1) not based on specific, cogent reasons; or (2) not supported by substantial evidence.

The BIA and IJ did not simply give general reasons for denying Kumar's application for relief.  Both referred to the numerous inconsistencies within Kumar's testimony, between his testimony and his affidavit, and between his testimony and his parents' affidavits.  They also based their adverse credibility determinations on Kumar's non-responsiveness when asked about certain inconsistencies.  These reasons are both specific and cogent.

Because the BIA's and IJ's adverse credibility findings were based on specific, cogent reasons, Kumar bears the burden of showing that the findings were not supported by substantial evidence. He does not meet that burden. Substantial evidence based on the INA § 208(b)(1)(B)(iii) factors supports the specific, cogent reasons given by the BIA and IJ.

First, Kumar's testimony at the removal proceeding was internally inconsistent. As an example, Kumar initially testified that when he arrived in Panama after fleeing India, he and the others traveling with him told the army that they wanted to apply for asylum. After the IJ asked whether they denied his application for asylum, Kumar stated that he did not apply, and that "over there [he] was not aware of asylum." In addition, Kumar testified early in the proceeding that on September 7 he was at home, saw Ram Rahim's followers coming, and fled. When they could not find him, they threatened his mother and sister instead. Later in the proceeding, though, he testified that on September 7 he was in a field when Ram Rahim's followers approached him, and he ran away.

Second, Kumar's affidavit and his testimony at the removal proceeding are inconsistent. Some of the inconsistencies in Kumar's testimony are minor. For example, Kumar testified that he entered the United States on September 26, 2017. But in his I-589 application and his affidavit he stated that he entered the United States on November 26, 2017. Kumar also referred to DSS as a "socio-spiritual organization" that oversaw "cleanliness campaigns,

blood donation drives, and tree planting." In his testimony, he refers to DSS as a place.

There are also major discrepancies between Kumar's affidavit and his testimony. In his affidavit, Kumar stated that on August 25, 2017, he was beaten "mercilessly" by Ram Rahim's followers for refusing to go to the rally in support of Ram. Kumar's testimony, however, told a different story. There he stated that August 28, 2017, was the only day he was beaten.[4] He also stated that he attended the August 25 event in support of Ram Rahim of his own volition, driving his own car and transporting other members of his village.

Kumar's affidavit stated that on August 28, Ram Rahim's followers beat him with sticks and showed him weapons because he refused to go show his support for Ram Rahim, and that they "forcefully took" him to Panchkula. But he testified that on August 28 Ram Rahim's followers beat him up and threatened him, but then left.

As a final example of how Kumar's testimony conflicted with his affidavit, Kumar's affidavit claimed that on September 7, 2017, he was again threatened by Ram Rahim's followers and that he was "scared and horrified." In his testimony, though, he said

---

[4] Kumar's testimony that he was only beaten once by Ram Rahim's followers also directly conflicts with his I-589 application for relief, where he stated: "[T]he workers of Gurmeet Ram Rahim and [the] BJP party attacked me thrice."

that on September 7, Ram Rahim's followers came to his house, but he saw them coming so he left.

Third, Kumar's testimony was inconsistent with the other evidence in the record. As previously mentioned, Kumar testified that on August 25 he went to the rally of his own volition and that he was not beaten. His father's affidavit stated that Kumar refused to go to the rally and was beaten. His father also stated that on August 28 Kumar was forcibly taken to the rally, which contradicted Kumar's testimony. Kumar's father's affidavit also portrayed DSS as an organization and not a place. Similar inconsistencies existed between Kumar's testimony and his mother's affidavit.[5]

Finally, Kumar's responses to many of the questions he was asked at his removal proceeding were unresponsive. He failed to answer questions asked by all parties—the Government, the IJ, and even his own attorney. When asked about the inconsistencies between his affidavit's version of events on August 25 and his prior testimony, Kumar did not answer the questions the government's attorney asked. Kumar likewise did not answer when he was asked by both the IJ and his own attorney about whether he applied for asylum in Panama, when he was questioned about whether DSS

---

[5] Though the BIA and IJ do not heavily rely on inconsistencies between Kumar's testimony and affidavits other than those of his parents, there are similar inconsistencies between Kumar's testimony and the affidavits of Jiya Lal, Sunil Kamar, Sanjeev Kumar, and Ramit Surinder.

was an organization, when he was questioned about the inconsistencies in his statements about the events of August 25, and September 7, and when he was asked whether Ram Rahim went by any other names.

Kumar argues that any inconsistencies and omissions in his testimony were trivial and immaterial. The discrepancies and inconsistencies discussed above are hardly trivial or immaterial. But even if they were, the IJ would still have been allowed to consider them in making its credibility determination. An IJ can consider *any* inaccuracy or falsehood, regardless of whether it "goes to the heart of the applicant's claim, or any other factor." 8 U.S.C. § 1158(b)(1)(B)(iii).

In sum, we must affirm the BIA's and IJ's adverse credibility findings because they were "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Adefemi*, 386 F.3d at 1026–27. In light of those findings, the record does not compel a finding that Kumar is eligible for asylum, withholding of removal, or CAT relief. We therefore deny his petition for review.

**PETITION DENIED.**